**NELSON et al. v. YORK et al.**

No. 13167—Opinion Filed July 25, 1922.

Rehearing Denied Oct. 5, 1922.

(Syllabus.)

1. **Wills—Undue Influence—Sufficiency.—Confidential Relations.**

Undue influence, such as will invalidate a will must be something which destroys

the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. In re Cook's Estate, 71 Oklahoma, 175 Pac. 507.

## 2. Wills—Proceedings to Probate—Burden of Proof.

In a proceeding to probate a will, where the right to admit the will to probate is contested, the burden of proof rests upon the proponents of the will to establish by a preponderance of the evidence that the will was executed according to the provisions of the statutes prescribing the manner of executing and publishing a will.

## 3. Same—Appeal—Sufficiency of Evidence

Record examined, and held, that the proponents of the will met the burden cast upon them by law.

Error from District Court, McCurtain County; Harve L. Melton, Judge.

Action in the District Court of McCurtain County by Grace York Nelson et al., appellants, against Mary Y. Trigg and Robert York, appellees, to reverse the judgment and order of the County Court of McCurtain County admitting to probate the will of Jerome B. York. Judgment of the District Court affirmed the judgment and order of the County Court. Appellants bring error. Affirmed.

Etheredge & Arnett and Rainey & Flynn (Fitzhugh, Murrah & Fithugh, Ewing, King & King, and M. Danaher, of counsel), for plaintiffs in error.

Harsh & Harsh, Armstrong & Jones, and Mc-Pherren & Cochran, for defendants in error.

KENNAMER, J. This appeal is prosecuted by Grace York Nelson, Lucile Anderson Johnson, Union & Planters Bank & Trust Company, executor of the estate of Minnie Anderson, deceased, plaintiffs in error, to reverse the judgment of the district court of McCurtain county affirming the order of the county court admitting to probate the last will and testament of Jerome B York, deceased.

Jerome B. York died on or about July 6, 1919, in Paris, Tex., though at the time of his death he was a citizen of Valliant, McCurtain county, Okla.

Thereafter, on the 25th day of July, 1919, Mary York Trigg filed in the county court of McCurtain county. Okla., an instrument purporting to be the last will and testament of Jerome B. York, deceased,

with a petition praying the judgment of the court that said will be admitted to probate as the last will and testament of Jerome B. York, deceased, and that letters testamentary issue thereon to Robert York and Mary York Trigg.

On the 6th day of August, 1919, Grace York Nelson and Minnie York Anderson filed their petition in said proceeding to probate said will contesting the right of the proponents, Mary York Trigg and Robert York, to have said will probated. After the contestants had filed their petition contesting the probation of said will, Minnie York Anderson, one of the contestants, died, and the executor of her estate, Union & Planters Bank & Trust Company, and Lucile Anderson Johnson, her daughter and heir at law, were substituted as parties to said proceeding in her place.

On the 15th day of October, 1919, after a hearing upon the petition to admit said will to probate and the petition contesting it, the court admitted the instrument filed to probate as the last will and testament of Jerome B. York, deceased, and directed that letters testamentary issue to Robert York and Mary York Trigg as executors of the will without bond.

Notice of appeal was filed by the contestants and the cause appealed to the districe court of McCurtain county. The appeal was upon both law and facts.

The estate involved being the same as is involved in the case of Elizabeth York, Plaintiff, v. Mary York Trigg and Robert York, No. 13168, the two cases were tried and submitted to the district court of McCurtain county upon the same evidence and were tried in the district court as companion cases.

We deem it unnecessary to review the evidence in this case at length, as the evidence has been reviewed in case No. 13168 (this day decided). The will in controversy was executed by Jerome B. York on the 12th day of December, 1914, and is in words as follows:

"Will of Jerome B. York.

"I, Jerome B. York, of Valliant, state of Oklahoma, being now in good health, strength of body and mind. and of disposing memory do hereby make, publish and declare the following to be my last will and testament, hereby revoking and canceling all other former wills by me at any time made.

"Article 1.

"I direct that funeral expenses and all my just debts be paid as soon after my

death as possible out of any moneys that I may die possessed of or that may first come into the hands of my executors.

### "Article 2.

"I hereby give, devise, and bequeath unto my son, Robert York, and Mrs. Mary Y. Trigg in trust and to be held by them, in trust for my wife, Elizabeth York, for and during her natural life, the sum of seventy thousand ($70,000) dollars, to be invested by them in a safe way for her benefit; and from the income of same, I direct that they pay to her or for her support, the sum of three hundred ($300) dollars per month, or such sums as may be needed to provide for her every comfort and attention. Said trustees are authorized and empowered to sell and convey any property that they may invest this trust fund in at any time that they may think it best to do so and reinvest the funds derived from such sale in other property to be held by them in trust for the uses and purposes as above stated. Any one purchasing property from said trustees shall not be required to look after or be held responsible for the re-investment of the money paid to the trustees in pursuance of such sale. I direct that all of this trust fund that may remain at the death of my said wife shall become a portion of my estate to be distributed as hereinafter directed.

"Jerome B. York.

### "Article 3.

"I give and bequeath to my daughter, Minnie York Anderson, the sum of five hundred ($500) dollars.

### "Article 4.

"I give and bequeath to my daughter, Grace York Nelson, the sum of one hundred ($100) dollars.

### "Article 5.

"I give and bequeath to my sister-in-law, Mrs. Lillie Miller, the sum of five hundred ($500) dollars.

### "Article 6.

"I give and bequeath to my grand-daughter, Lucile Anderson, the sum of one thousand ($1,000) dollars.

### "Article 7.

"I will and bequeath to my granddaughter, Helen Trigg, the sum of one thousand ($1,000) dollars.

### "Article 8.

"I give and bequeath to my grandson, York Trigg, the sum of one thousand ($1,000) dollars.

### "Article 9.

"I give and bequeath to my nephew, William A. Wells, the sum of five hundred ($500) dollars.

### "Article 10.

"I give, bequeath and devise all the residue, rest and remainder of my estate, both real and personal property, including whatever may be held, after the death of my wife, under the provision of Article Two herein, to my two children, Mary York Trigg and Robert York, to be divided between them equally, share and share alike, and in the distribution of my estate between my said two children, I direct that neither of them shall be charged with any money or property which have given them.

"Jerome B. York.

### "Article 11.

"I hereby appoint and designate my son, Robert York and my daughter, Mary York Trigg, as executors of this my last will and testament without bond.

"In Witness Whereof, I, Jerome B. York, have to this my last will and testament consisting of three sheets of paper subscribed my name, on each page hereof, this the 12th day of December, 1914.

"Jerome B. York.

"Subscribed by Jerome B. York in the presence of each of us, the undersigned, and at the same time declared by him to us to be his last will and testament, and we, thereupon at the request of Jerome B. York, in his presence and in the presence of each other, signed our names hereto as witnesses, this the 12th day of December, 1914, at Valliant, Oklahoma.

"S. B. McCartney,

"Valliant, Oklahoma.

W. B. McCallister,

"Valiant, Okla.

"Bernie Herstein.

"Valliant, Okla.

Jerome B. York, on the date of his death, about July 6, 1919, left surviving him his widow, Elizabeth York, Mary York Trigg, daughter, Grace York Nelson, daughter, Minnie York Anderson, daughter, and Robert York, son. The last will and testament of Jerome B. York practically disinherited his two daughters, Grace York Nelson and Minnie York Anderson, and bequeathed the greater portion of his property to his two children, Mary York Trigg and Robert York.

Counsel for the appellants, the contestants of the will, under their assignments of error present but two controlling questions for reversal of the judgment of the district court affirming the order of the county court admitting the will to probate: First, that in the execution of the will the testator, Jerome B. York, was acting under undue influence of the beneficiaries, Mary York Trigg and Robert York, and that fraud was

committed by said beneficiaries in securing the execution of said will. Second, that the testator on the date of the execution of said will was mentally incompetent to execute a valid will for the reason he was suffering under a mental delusion, a condition for which Mary York Trigg and Robert York were responsible.

It is urged in the brief of counsel for appellants that a fiduciary and confidential relation existed between the two beneficiaries. Mary York Trigg and Robert York, and the testator, Jerome B. York, and that such relation raises a strong presumption of undue influence and fraud. That the burden of proof was on the proponents to prove the execution of the will in accordance with the requirements of law and that the instrument was the free and voluntary act of the testator.

In this case there appears to be no serious controversy between counsel for the respective parties as to the applicable rules of law as supported by the authorities. The rule is well established that the proponents of the will had the burden of establishing its execution in accordance with the requirements of law and that the instrument presented for probate was the free and voluntary act of the testator, mentally capable and qualified to make a will. Hunter v. Battiest, 79 Okla. 248, 192 Pac. 575; Parker v. Duncan, 62 L. T. R. 642; McCarty et al. v. Weatherly et al., 85 Okla. 123, 204 Pac. 632; Delafield v. Parrish, 25 N. Y. 9.

In the instant case the trial court heard the testimony of numerous witnesses and had before him much documentary evidence, consisting of many letters written by the testator during his lifetime, a number of which were written within a month or two before his death. After a careful review of this evidence the court found that the will admitted to probate was made by Jerome B. York, a man of strong personal character and an intelligent and successful business man, and expressed the intention of the testator acting in accordance with his own free agency. The trial court properly held it was not for him to determine whether the testator acted right or wrong in the way he distributed his estate. It was the plain duty of the court to sustain the will of the testator if the evidence established the fact that the will had been executed in accordance with the requirements of law and the testator was capable of making the will. Undue influence is insufficient to invalidate a will unless it be such as destroys the free agency of the testator at the time when the instrument is made. In re Cook's Estate,

71 Oklahoma, 175 Pac. 507; In re Swartz Will, 79 Okla. 191, 192 Pac. 203; McCarty et al. v. Weatherly et al., supra.

Counsel for appellants have argued at great length in their brief that by reason of the failure of Jerome B. York's attorneys, G. H. Montgomery, of Valliant, Okla., and George Harsh, of Memphis, Tenn., to testify, that such failure on their part is a strong circumstance indicating that the will was prepared in Memphis, Tenn. We are unable to concur with counsel in this contention, and, furthermore, considering the fact that Jerome B. York was a bright-minded business man, who could not be easily influenced against his will, it is quite immaterial where he had his will prepared.

The three subscribing witnesses all appeared at the trial of this cause and testified in person, and according to their testimony Jerome B. York personally requested them to come to the office of G. H. Montgomery in the town of Valliant, where he was having his will prepared, for the purpose of witnessing it. That they want to his office pursuant to his request and saw him sign the will, which he declared to be his last will and testament, and that in his presence at his request they signed the will as witnesses. It is important in this controversy to observe that neither Mary Y. Trigg nor Robert York was present at the time Jerome B. York executed his will.

Jerome B. York lived more than four years after he executed his last will, and according to the testimony of numerous witnesses, who were well acquainted with Jerome B. York during this four years, he was in good health and an exceptionally successful business man, a man well posted on current events and at all times by his conduct evidencing the fact he was a bright-minded man. It appears to us that it would be unreasonable to conclude that a man of this character was influenced against his will to make a will which did not represent his free and voluntary act. It would, indeed, present an unusual situation if such a man during the four years, or more, that he lived after the execution of such a will, never made any attempt to revoke it, if it did not represent his free and voluntary act.

While it is to be regretted that such estrangement was brought about between the testator and his two daughters which caused him to practically disinherit them, that is a matter the court cannot relieve them from, where the will was executed as required by law and represents the free and voluntary act of the testator.

Jerome B. York had a right under the law to make a will, and being in every way capable and qualified to make a will, the manner in which he disposed of his property, so long as he acted within the law, was a matter for him to determine and not the court. The reasons for making the disposition of his property which he did were better known to him than the court can ever be advised of through the channels of evidence. In this class of cases the court is only concerned with the proposition of whether or not the will was executed in accordance with the requirements of the law, the competency of the testator to make the will, and that the testator was acting freely and voluntarily in its execution.

There appearing no error in the record and the judgment of the trial court appearing to be supported by the evidence, the judgment is affirmed.

PITCHFORD, V. C. J., and JOHNSON, McNEILL, and ELTING, JJ., concur.