ANDERSON et al. v. DAVIS.

No. 34063.    April 29, 1952.

Rehearing Denied Jan. 10, 1953.

Application for Leave to File Second Petition for Rehearing Denied May 19, 1953.

*256 P. 2d 1099.*

478

Wayne W. Bayless, Oklahoma City, and G. C. Spillers and G. C. Spillers, Jr., Tulsa, for plaintiffs in error.

Tom L. Irby, C. L. Armstrong, and Felix Duvall, Ponca City, for defendant in error.

PER CURIAM. The question presented by this appeal is whether the will of Arne N. Anderson should be admitted to probate, or whether probate should be denied on the presented contest on the ground of undue influence. In such contest the cause is one of purely equitable cognizance and it is the duty of this court to examine the entire record and weigh the evidence. See In re Chubbee's Will, 133 Okla. 156, 271 P. 681, where it was held in paragraph one of the syllabus:

"Will contest cases are of purely equitable cognizance, and upon appeal, in such cases, from the district court to the Supreme Court it is the duty of the Supreme Court to examine the whole record and weigh the evidence and render, or cause to be rendered, such judgment as should have been rendered in the district court."

We have examined the entire record and we here set out the facts, circumstances and conclusions which in our view guide and direct the determination of the cause.

Arne N. Anderson was born in Norway where he received about a grade school education. He came to America in young manhood and lived with a brother and sister-in-law who taught him the English language. He was frugal in his habits and careful in his investments and accumulated an estate of the value of about $100,000 to $150,000. He had no immediate family of his own, but was on good terms with his brothers who predeceased him, and he remained on good terms with his several nieces and nephews. He died in May, 1948, when 86 years of age.

On the last day of 1944, or the first day of 1945, then aged about 83, Anderson sustained a broken leg in an accidental injury and was confined in a hospital more than a year. He was in declining health and vigor from the first of 1945 until his death three years and four months later, during which time he was back in the hospital a time or two, and ill at times in his hotel room. It is clearly shown that during that period of about three years and a half he suffered substantial decline in physical health and strength and in mental competency, and in the initiative and aggressiveness which had marked his life in previous years.

During that three year period Mr. Johnson, principal beneficiary of the will, had charge of the business affairs, funds and property of Anderson and they were together much of that time and until Mr. Anderson died. Specifically the will named Mr. Johnson and his wife as principal beneficiaries.

It is that association between Mr. Anderson and Mr. Johnson, and the details of the transactions in reference to the property and in reference to the making of the will, that give rise to the claim of undue influence.

Mr. Johnson was cashier of the bank in which Mr. Anderson was a stockholder. Mr. Johnson had the will drawn which left $2,500 each to five nieces, and all other property, real and personal, to Mr. Johnson and his wife. The will was executed in the bank in Mr. Johnson's presence on March 1, 1947. While Mr. Anderson was in the hospital on September 3, 1946, he executed, without consideration, a release of a mortgage on Mr. Johnson's home which represented a loan made some years before. On the day Mr. Anderson died, or the next day, Mr. Johnson presented various assignments to himself of a bond of $10,000, and of Anderson's bank stock and stock in two Building and Loan Associations, and on May 22, 1948, he recorded a deed by which Anderson conveyed to him a city lot and farm lands of high value. The assignments were dated Sept. 19th and 23rd, 1947, and the deed was dated October 16, 1946. It was Mr. Johnson's position that the assignments and the deed were delivered to him when executed, and that he held them in secret or in confidence until Mr. Anderson died, because Mr. Anderson specifically requested it. He did not claim that any consideration was paid in any such transactions, but claimed that each such conveyance was a voluntary gift to him for friendly service.

Mr. Johnson admits having complete charge of the property and affairs of Mr. Anderson during the three and one-third years, during which time he made many collections and bank deposits, and wrote many check for Mr. Anderson, with a great many visits and conferences, sometimes several in a day, but he claims all this was at the request of Anderson and was but the performing of friendly services. He admits that he had the will drawn, but states that also was at the request of Mr. Anderson and that the will was drawn as he had requested it. It is his position that throughout all the transactions his motives were altogether wholesome. On the contrary, it is the position of his adversaries that Mr. Johnson was proceeding on a plan and design to obtain the Anderson property, and that presents the issue between the parties.

It is noted that throughout his life Mr. Anderson continued to pose and act as the owner of all his lands and corporate stocks and claimed to continue in that ownership although the conveyances to Mr. Johnson were dated as above set out long before Mr. Anderson's death. There are several obnoxious contradictions in the testimony of Mr. Johnson. There can be no doubt that during all the above period a relationship existed between Mr. Anderson and Mr. Johnson which was highly confidential, and that relationship places on Mr. Johnson certain burdens in this litigation.

Of course, no man can say, to a certainty, whether Mr. Johnson's motives were wholesome and pure, or whether designed to take advantage of this elderly man. It is our duty to weigh the evidence and observe the overall picture which is drawn by the acts, transactions and statements of the parties. In such a case it will not do for this court to merely scan the testimony in a perfunctory manner and approve the finding before us. When a citizen has passed away and his property is before the court to be passed to his heirs by law, or to an unrelated person by a will which it is charged he influenced for his private gain, this court must really weigh the evidence, in the highest and most conscientious sense of that term, with firm resolution to do justice in the instant case, within guidance of former precedent, and thereby laying down further precedent for future guidance of men and courts.

Mr. Johnson points to the long family friendship and to the friendship existing for many years between his father, now deceased, and Mr. Anderson, who were about the same age, and evidence is offered to show that the father gave valuable aid to Mr. Anderson by investment advice and counsel, and Mr. Johnson offers in explanation of the mortgage release that Mr. Anderson expressed the desire that Mr. Johnson and his wife have a home, free of all encumbrances. We consider those circumstances, but we note that the testimony of Mr. Johnson shows serious contradiction as to the execution of this mortgage release. We also note that Mr. Anderson rendered some aid to Mr. Johnson's father as evidenced by the loan of several thousand dollars on his unsecured notes, which notes remained unpaid at Mr. Anderson's death, and, also, we note the evidence that Mr. Johnson is a man of some substantial worth in his own right, aside from the Anderson properties.

Mr. Johnson points to the fact that the will was found in Mr. Anderson's bank box after he died as indicating that Mr. Anderson had exclusive possession and control of the will from its execution until his death. That is a circumstance to be considered, but in that connection we note that, since Mr. Johnson was in control of all other items as aforesaid, he may have had access to the bank box. We cannot say he did because there is no direct evidence to that effect. We do observe, however, that the unpaid promissory notes above mentioned were not in the Anderson box, but were held elsewhere in the bank.

There is evidence that Mr. Anderson had executed a former will by which he gave Mr. Johnson his bank stock in the sum of $10,000 and divided the balance of his estate among his relatives. It is not shown just when that will was executed, but apparently it was several years before he died, and that apparently remained as his last will until late in 1946, when, in a conference with Mr. Johnson, Mr. Anderson for the first time discussed changing his will.

A controlling point in this case, or a strong point, is the fact that there is no showing that Mr. Anderson had any independent advice in connection with this will which gives the principal part of his estate to a person with whom he had this highly confidential relationship. In Hunter v. Battiest, 79 Okla. 248, 192 P. 575, this court said:

"When the legal presumption of undue influence has arisen by showing

confidential relations, whether in dispositions of property inter vivos or by will, the burden of proof is upon the party seeking to take the benefit of such disposition to rebut the presumption attaching thereto by showing either a severance of the confidential relations, or that the party making the disposition had competent and independent advice in regard thereto. Gidney v. Chappel, supra; McQueen v. Wilson, 131 Ala. 606, 31 South 94."

In the case of In re Kuhn's Will, 120 Kan. 13, 241 P. 1087, it was held:

"When a will is prepared by the sole or principal beneficiary, who was the confidential agent, or who occupied a position of confidence or trust, to the testator, the instrument will not be held valid as a will unless it be affirmatively shown (a) that the testator read or knew its contents, and (b) had independent advice with reference thereto."

In that case and in other cases in that court the term "independent advice" was held to mean:

"That the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was, furthermore, so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction."

In the case of In re Conroy's Estate, 29 Wyo. 62, 211 P. 96, where the decedent was aged, and for a short period of years the principal beneficiary in the will managed the decedent's property in and by reason of a confidential relationship, probate was denied and the court took occasion to enumerate the following elements of undue influence which should be considered by the court on the question of undue influence:

"(1.) The suspicion excited by the fact that the beneficiary drew the will gained strength when it appears that he was a stranger to the blood of the testatrix.

"(2) That by the will he takes a large or unreasonable proportion of the estate.

"(3) That he was the trusted or confidential agent or adviser of the deceased.

"(4) That he was present and active in the execution of the will.

"(5) That the testatrix was of advanced age, impaired faculties, and feeble of mind and body.

"(6) That she had no independent and disinterested advice with reference to making the will."

All of the elements there stated are present in the case at bar, and also in that case, as in the case at bar, there had been some outside statements of intention to will or to leave the property to the principal beneficiary on account of friendship or acts of kindness.

In the case at bar there is no proof whatever that the testator Anderson had any independent advice concerning this devising of his property. The proponent points out that he had opportunity for such independent advice, but in that connection we note the forceful demonstration of high secrecy as to all the property transactions between testator and Mr. Johnson. The notary acknowledgments were taken by a notary public who was a permanent employee in Mr. Johnson's bank. All the circumstances would imply or indicate that the testator did not have independent advice.

In Fairbank v. Fairbank, 92 Kan. 45, 139 P. 1011, the facts disclose that on March 31, 1906, the testatrix, a widow, deeded a large tract of land to her son. On February 14, 1907, she executed a will giving him almost all of her property and naming him as executor. On August 2, 1908, she died. The beneficiary offered the will for probate and his sister and the testatrix' grandchildren contested the probate of the will. The will was denied probate on the ground of undue influence of the chief beneficiary. The court in discussing the

question of undue influence gave great weight to the following circumstances:

"(1) The deed was not recorded until after the death of the grantor, and the other members of the family did not know of its execution.

"(2) The testatrix died at the age of 79 years.

"(3) For about 25 years before her death, her son Rudolph who is unmarried, managed her property and business, living with her for the last few years.

"(4) She was feeble and in ill health.

"(5) She had learned to read after she was 60 years of age.

"(6) She was to a certain extent enfeebled mentally by dropsy, heart disease and Bright's disease (the latter being a kidney disease.) She was not as clear mentally as she had been.

"(7) She was not previously acquainted with the lawyer who drew her will and had never before employed him, while the beneficiary consulted with him as his attorney about that time.

"(8) Some 10 years before she died, Elizabeth Fairbank expressed an intention that her daughter, Mrs. Carter (one of the contestants) should have an equal share of her property, and she repeated this a year and half before her death."

All those circumstances were present in the case at bar by direct proof or fair analogy, noting, however, that there are slight differences. While the confidential relationship as applied to complete property management in that case extended over a longer period than here, we have in this case a testator who was several years older.

In the case of In re Mullen's Estate, 8 Cal. App. 2d 684, 47 P. 2d 746, the California court said:

"The testimony of appellant and his wife, besides being impeached as above shown, must also be weighed against the presumption of undue influence, which arises from proof of the existence of a confidential relation between a testator and a beneficiary, coupled with activity of latter in the preparation of a will. In re Estate of Baird, 176 Cal. 381, 168 P. 561; In re Estate of Nutt, 181 Cal. 522, 185 P. 393. In the instant case decedent requested appellant to prepare a will, and the latter had his own wife pen it at his direction.

"* * *

"A previously executed testamentary writing, conflicting with the propounded instrument, executed voluntarily and while decedent had recognized mental capacity, is an evidentiary fact from which undue influence or unsoundness of mind at the time of the later writing might be inferred, there being no explanatory facts."

In the case of In re Hampton's Estate, 39 C. A. 2d 488, 103 P. 2d 611, the California court held:

"If the provisions of the propounded instrument vary radically from testamentary intentions which the decedent entertained previously to the execution of the writing, this fact, when unexplained, is one of the recognized indicia of imposition or undue influence."

We have heretofore noted in this opinion the sharp differences between the former will of Anderson and the present will which was executed about a year after Mr. Johnson took over the detail management of the property, funds, collections and expenditures of the deceased.

In the case of In re Lance's Estate, 216 Cal. 397, 14 P. 2d 768, a will was denied probate which named as the sole beneficiary a friend of 20 years standing, who was not related to testator by blood or marriage, but a confidential relationship existed between the two. The court there noted three important elements held to give rise to a presumption of undue influence, and held to place the burden on the proponent to show that he had not been guilty of undue influence as follows:

"(1) That confidential relations existed between the proponent and the decedent;

"(2) That the proponent 'unduly profited by the terms of the will * * * to the prejudice of the heirs of the decedent.'

"(3) That the proponent actively participated in the execution of the will."

All of these elements are present in the case at bar.

In the case of In re Rupert's Estate, 152 Ore. 649, 54 P. 2d 274, the decedent had a former will naming his nephew as beneficiary. He later made a will naming his physician as principal beneficiary. The relationship there was a confidential one and the beneficiary denied that he had ever influenced the deceased in regard to his will. In the course of the opinion there and in reference to the situation, the Supreme Court of Oregon said:

"But denials alone will not suffice. He participated in the will making and owed a duty to give an explanation of occurrences which only he could explain. * * * Possessed of the influence which he held over the decedent, the latter's mention of an intention to make a will, and include a devise in it for appellant, should have caused the latter promptly to retire from the scene. If he wanted to participate, he should have surrounded the decedent with those of his old-time friends who would have given him disinterested advice."

In the case of In re Lobb's Will, 2 Appeals 173 Ore. 414, 145 P. 2d 808, and 177 Ore. 162, 160 P. 2d 295, there is this:

"Where a principal beneficiary under a will sustains a confidential or fiduciary relationship toward the testator, and actively participates in the preparation of the will, he must assume, when the will is attacked upon the ground of undue influence, the burden of proving that he did not exert such influence. In re Rupert's Estate, 152 Ore. 649, 54 P. 2d 274; In re Knutson's Will, 149 Ore. 467, 41 P. 2d 793. * * *"

In that case the principal beneficiary was an attorney at law and was the testator's attorney, but the court there shows no disposition to limit the legal principle to be appliable only as between attorney and client. All know that relationship between men may be just as a confidential in fact when neither is a lawyer. In this case the record is such that all must agree that the relationship between Mr. Anderson and Mr. Johnson was such a confidential relationship of the highest degree.

We will cite no more decisions. We have selected these citations because we regard them as forceful statements, to be applied here. A multitude of authorities could be cited along the same line, but we deem it not necessary. We do not understand that proponent questions these rules of law. He does insist with vigor either that they do not apply here, or that their application does not guide to a reversal. However, that is a decision for this court to make in all sound judicial discretion. It is our duty to weigh the evidence and apply the law in full justice as we conscientiously view it.

Our duty here is a solemn duty because the case involves probably a fortune in amount, which will go by inheritance to the blood relatives of Mr. Anderson if we decide it one way, or which will go as a gift to his friendly banker if we decide it the other way.

We see no need to further detail the evidence. We have carefully considered the entire record. The contest to the will must be sustained on the ground of undue influence, on account of the showing made in that regard, and on account of the failure of Mr. Johnson to discharge the burden cast on him by the legal rules above referred to, and by the relationship shown by the facts and circumstances.

For the reasons stated the judgment is reversed, and the cause remanded, with directions to render judgment sustaining the contest and denying probate of the proposed will.

ARNOLD, C. J., and WELCH, CORN, O'NEAL, and BINGAMAN, JJ., concur. HALLEY, V. C. J., and GIBSON and DAVISON, JJ., dissent.

HALLEY, V. C. J. (dissenting). I dissent from the majority opinion in this case. I do not believe that the decision reached is sustained by the record, but it is predicated on a factual situation shown by overwhelming evidence not to exist.

The last will of Arne N. Anderson was admitted to probate after a hearing in the county court of Kay county. In that court Charles E. Anderson filed a formal contest, but did not introduce evidence or urge the contest in any manner. He was not represented by counsel until later. On appeal the district court, after an extended hearing, with many witnesses testifying, confirmed the county court's order and dismissed the appeal of those who contested the will. The district judge saw all witnesses upon the stand, observed their demeanor, considered their interest or lack of interest, and decided the issues in favor of the proponents of the will.

"A will contest is a case of purely equitable cognizance, and on appeal this court will examine the entire record and weigh the evidence, but the findings and judgment of the trial court will not be disturbed unless clearly against the weight of the evidence." Runnels v. Burton, 202 Okla. 406, 214 P. 2d 709.

See, also, In re DeVine's Estate, 188 Okla. 423, 109 P. 2d 1078.

In the trial court and in this court contestants attack the validity of the will on two grounds: (1) that Arne N. Anderson was not mentally competent to make a will on March 1, 1947, and (2) that the will was procured by undue influence and fraud by the principal beneficiary, Wilfrid B. Johnson.

Of necessity, and for clarity, this dissent will be extended by recital of certain facts not appearing in the majority opinion. That opinion does not squarely meet the presented issue as to mental competency of testator, but in my opinion the extended testimony offered on mental competency has a substantial bearing on the correct decision of the

issue of undue influence, and the testimony of more than a dozen witnesses cannot be ignored or dismissed with a casual observation.

For contestants, three persons not related to deceased and five of the nieces and nephews testified concerning his mental competency. A majority of them testified that after his leg was broken December 31, 1945, Mr. Anderson's memory was poor, or that he was forgetful or that he did not recognize people including relatives. Several, but not all, expressed an opinion that he was mentally incompetent to make a will on March 1, 1947. One contestant, Tora Rock, a niece, who did not see Arne Anderson in the year 1947, testified:

"A. From 1945 on there I don't think he would be able to make a will at his age.

"Cross-examination by Mr. Duvall:

"Q. That was largely because of forgetfulness? A. Yes, his forgetfulness, he didn't recognize people, at times he didn't.

"Q. Well, it was largely because of his forgetfulness? A. Yes, and absent mindedness.

"Q. Now, you are only 60? A. Yes.

"Q. And you know you are competent to make a will? A. No, I don't think so."

The quoted testimony is typical. Obviously, to the trial judge, who knew the testator, it was incredible.

We have held that mere advanced age or physical infirmity does not render one incapable of making a will or entering into a contract. Dunkin v. Rice, 197 Okla. 150, 169 P. 2d 210.

With the exception of one nephew these heirs had all moved away from Ponca City and did not reside in Oklahoma during the last years of Mr. Anderson's life, and they saw him only on occasional visits.

On the contrary, more than a dozen disinterested witnesses, including business and professional men, public officers and doctors, testified that he was mentally competent at the time the will was made. All had been residents of Kay county for years and had frequent and some of them almost daily contact and opportunity for observation of him. Included in these witnesses were the night clerk of the hotel where he lived; the policeman who walked the beat between the hotel and the bank where Anderson spent much of his time, the vice president of the First National Bank of which Arne Anderson was a stockholder, director and depositor; president of a trust company; officer of a Savings and Loan Association; a former city councilman, who had served on the council with Anderson; a retired dentist, and the physician who, so far as this record reveals, had attended Arne Anderson in his every illness. Each of these witnesses testified that deceased was mentally competent to make a will and dispose of his property at the time his will was made. Both the county judge and the district judge found Arne Anderson to be competent, and I am of the opinion that such findings are sustained by a great preponderance of the evidence. I cannot lightly regard the opinions of such witnesses as testified that Arne Anderson was mentally competent. Nor can I substitute a judgment contrary to that of the county judge and district judge who knew the testator and heard and observed the witnesses as they testified.

But it is said the will was obtained by undue influence and fraud of the principal beneficiary, who stood in a confidential relationship with testator.

The rule applicable here was stated by this court in Re Jones' Estate, 190 Okla. 123, 121 P. 2d 574:

"Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time the instrument is made and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced in the ordinary affairs of life or that he was surrounded by relatives and friends in confidential relationship with him at the time of its execution. Suspicion, conjecture, possibility, or guess that undue influence or fraud has induced a will, is not alone sufficient to defeat the probate of a will. Power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised."

The evidence shows that Anderson watched with interest and probably admiration as Johnson developed from a young man into a successful business man. Through the years Johnson did him many favors. He called for Johnson when he was ill. Johnson and his wife visited him frequently while Anderson was confined in a hospital for more than a year. Anderson was close fisted. Through the years Johnson filled out papers for Anderson in his leasing of property and loans of private funds for which no charge was suggested by Johnson for his services. Many bankers do these things for customers or friends.

Contestants now say that these acts were performed by Johnson designedly and to the end that he might later exercise an undue influence when Anderson came to making his will. The record does not sustain that contention. Friendship might exert an influence over a person, but such acts of friendship even when confidential relations exist do not necessarily mean that it is what is known at law as an "undue influence". Whether or not the influence of one person upon another is an "undue influence" is a question of fact for the court to decide, in consideration of all the evidence in the cause.

The same rule was announced in Re DeVine's Estate, supra. In that case, just as in the case before us, the contestant was a nephew and the principal beneficiaries were not related to the testator.

In Canfield v. Canfield, 167 Okla. 590, 31 P. 2d 152, we discussed at

length the subject of undue influence and influence gained by acts of kindness. We approved the following quotations from various courts:

"Influence secured through acts of kindness is not wrongful, and therefore not undue." Chrisman v. Quick, 174 Ky. 845, 193 S. W. 13.

"Influence over testator gained by affection and friendly attention is not 'undue influence' which will invalidate a will." Biggerstaff v. Wicks, 348 Ill. 129, 180 N. E. 840.

"The word 'undue' when used to qualify 'influence', has the legal meaning of 'wrongful', so that 'undue influence' means a wrongful influence, but influence acquired through affection is not wrongful." Hurd v. Reed, 260 Ill. 154, 102 N. E. 1048.

This record does not reveal that Wilfrid Johnson exercised influence over Arne Anderson to persuade him to make the will in question, to say nothing of employing such influence as would destroy the free agency of the testator or substitute his will for that of the testator at the time the will was made.

Various witnesses have described the traits of character of Anderson as follows: "good business man"; "positive"; "he wouldn't spend much"; "he was tight"; "most conservative man I ever knew"; "stubborn old man"; "determined"; "alert"; "he was just as keen as I ever saw him up to his last illness." It is difficult for me to understand how a man possessed of these qualities could be easily influenced or that he would permit another person's will to be substituted for his own.

Conceding that confidential relationship may give rise to a presumption of undue influence, the overwhelming evidence shows that the testator was not influenced by Johnson or any one else in making his will. Furthermore, the majority opinion assumes, contrary to the evidence, that Johnson prepared the will in question. The undisputed evidence is that Anderson directed how his will should be drawn; that it was drawn by a reputable member of the bar of this state, and that the subsequent changes in the will were directed by the testator and were typewritten only by Johnson. Under the record here there was no occasion for the rule relating to "independent advice" to ever apply.

A person possessed of mental capacity has the legal right to dispose of his property as he wishes.

"The right to make a will includes the right to make it according to testator's own desires, subject only to the statutory restrictions." In re Cook's Estate, 71 Okla. 94, 175 P. 507.

In addition to the cases above cited, this court has held that acts of kindness do not constitute undue influence such as would defeat the probate of a will, and we have consistently followed the rule of In re Jones' Estate, supra; McClure, Ex'r, v. Kerchner, 107 Okla. 28, 229 P. 589; Kindt v. Parmenter, 83 Okla. 116, 200 P. 706; Nelson v. York, 87 Okla. 210, 209 P. 425; In re Cook's Estate, supra; Myers v. Myers, 130 Okla. 184, 266 P. 452.

It is true that confidential relations existed between Anderson and Johnson. But those relations were mutual. They were the usual confidences incident to an association in business. This record does not reveal that Johnson ever dominated or controlled Anderson. In fact, it would indicate that Anderson was the more dominant. Johnson came at his every beck and call. Johnson responded when Anderson was ill and called for aid. Anderson loaned his money, rented his farms and town property; made his own deals, and then, at his request, Johnson prepared the instruments incident to the business. This record does not reveal, in the years of their acquaintance, where Johnson ever clashed with Anderson's views on any matter or imposed his will over Anderson's will.

When it came to the preparation of the will in question the testator told

Johnson of his desired distribution of the estate, named the five nieces who were to be given bequests, and directed that he have an attorney draw the will. This was done and the will given to Anderson, who kept it several weeks. He returned, stating that he desired two changes, and Johnson redrafted the will to reflect the changes as directed by Anderson. Again Anderson retained possession of the will for several weeks. On the day that he decided to execute the will Anderson approached a friend whom he wanted as a witness. On their way to the bank this lonely old bachelor told his friend that he was leaving his property to Johnson and his wife; that they had treated him better than anybody. The will was executed. Anderson placed it in his safety deposit box, where it remained until his death nearly fourteen months later. It is intimated in the majority opinion that Johnson, too, had access to the will, but there is no proof or evidence which will justify the insinuation.

I do not agree with the majority opinion that Johnson had complete charge of Anderson's property and affairs for three and one-half years prior to his death. The hospital record of Anderson's illnesses following his confinement with a broken leg, which confinement terminated February 4, 1946, shows that he was confined again for one week September 1, 1946, to September 8, 1946, and from January 3, 1948, to January 6, 1948. He was again confined from March 12, 1948, to his death on May 20, 1948. He was not ill from September 8, 1946, through the entire year 1947. The will was executed March 1, 1947. The bank's records reveal that from that date to his last hospitalization Arne Anderson made 32 visits to his safety deposit box, in which the will was kept, and signed the authorization card upon each such occasion. During that time he negotiated and executed a lease on his farm, consulted his farm tenant frequently as to crops and improvements, and collected monthly rentals from his property in town.

This record is replete with evidence showing that Arne Anderson had a very great affection for Wilfrid Johnson and his wife Marie. To various people he referred to them as his children and to Wilfrid as his son.

A quarter of a century before this will was made Arne Anderson expressed a determination to handle his affairs as he saw fit and indicated feelings of partiality and favoritism even concerning his nieces and nephews. At a family picnic in 1920 he told a nephew that he was going to see that his relatives were taken care of "in the proper manner", and said "there are some I will favor a little more than the others, that I think a little more of." It is evident that he believed that he was the one to determine what would be the "proper manner."

In 1945 when certain relatives were visiting him in the hospital he told a friend that his folks had his property divided up and figured out how they were going to spend it, and added "but I'm going to fool them." When the will was made he knew how he wanted to distribute his property.

In its opinion this court cites two Oregon cases: In re Brown's Estate, 165 Ore. 575, 108 P. 2d 775, and In re Lobb's Will, 177 Ore. 162, 160 P. 2d 295. I have no quarrel with the rules announced therein. This court has made similar announcements, which could have been cited. But I do not agree that the factual situations of those cases, one dealing with the will of an illiterate Indian, naming his attorney as chief beneficiary, and the other with the will of an old lady who was infatuated with her attorney and named him as beneficiary, are comparable with the situation of the instant case. Arne Anderson was a competent and shrewd business man who had accumulated his fortune by the exercise of a sound business judgment and frugality. He was a positive character who knew what he wanted done with his estate. The majority opinion defeats the wishes

488

of the testator as expressed in his will. The evidence is overwhelming that he knew what he was doing when he willed the bulk of his estate to a stranger to his blood who had been good to him in his lifetime rather than to his blood relatives who, after his death, swarmed from far and near to prove that the testator was non compos mentis when he executed the will, and before and after. The picture is familiar. But seldom in such circumstances are the expressed wished of the testator disregarded.

The majority opinion substitutes the judgment of this court for that of the county court and of the district court, both of which heard the overwhelming testimony of the testator's intimates and associates to the effect that the testator, though old in years, was sound in mind.

The facts of this case are similar to those in Re Wheeling's Estate, 198 Okla. 81, 175 P. 2d 317, but much stronger in support of sustaining the will, for there the testator was under guardianship. In that case we said:

"It appears that the will in the present case was duly executed and in accordance with the exact wishes and request of the testator, and upon his sole volition. The judgment of the trial court on the issue of testamentary capacity and in admitting the will to probate is not against the clear weight of the evidence and therefore cannot be disturbed. In re Shipman's Estate, supra, (184 Okla. 56, 85 P. 2d 317); In re Will of Son-se-gra, 78 Okla. 213, 189 P. 865."

Even if the judgment is to be reversed I think the case should be remanded for a new trial rather than for this court to render judgment.

GIBSON and DAVISON, JJ., concur in this dissent.