In the Matter of the ESTATE of Connie E. FOLEY, Jr., a/k/a C. E. Foley, Jr., Deceased.

Marshall R. FOLEY et al., Appellants,

v.

Normajean SELLERS, Appellee.

No. 46566.

Court of Appeals of Oklahoma, Division No. 1.

July 23, 1974.

Rehearing Denied Aug. 13, 1974.

Certiorari Denied Feb. 11, 1975.

Kenneth W. Lackey, Eufaula, for appellants.

James R. Eagleton, Charles L. Follansbee (deceased), W. L. Eagleton, Tulsa, for appellee.

ROMANG, Judge:

The sole beneficiary under the deceased's will was Normajean Sellers. The will was upheld following a contest on

grounds of lack of testamentary capacity of the deceased and undue influence by the beneficiary. Salient parts of the findings of facts adopted by the trial court present the aspects of this case significant to this appeal:

"1. Connie E. Foley, Jr., hereinafter referred to as testator, died in Eufaula, Oklahoma on October 14, 1972 at the age of 69 years without . . . wife or issue. Prior to September, 1971 he was physically active and a mentally competent businessman whose principal business activities concerned the management of farms and rental properties in the town of Eufaula. In September, 1971, while in Houston, Texas, testator suffered a stroke that paralyzed the right side of his body and impaired his speech. Shortly thereafter, when he was able to travel, he was flown back to Eufaula where he entered a nursing home on October 21, 1971.

"2. For many years Normajean Sellers, the daughter of a brother of testator, was a favored niece of her uncle Connie; through the years they had a warm, close, wholesome relationship as uncle and niece . . . During the last 4 or 5 years of his life testator told two of his closest friends that he was going to leave all of his estate to his niece, Normajean Sellers. Some witnesses testified that he said he was only going to leave her part of his estate. Several witnesses testified that testator stated that he did not want any of his estate to go to his brother, Marshall R. Foley or his half brother, Leo G. Whitlow. Testator told A. W. Tolleson a number of times during the last few years of his life that he planned to leave his entire estate to his niece, Normajean Sellers. Testator also told A. W. Tolleson and Judge Kirksey Nix that he had decided to leave out of his will two daughters of his half brother, Ralph Whitlow, for the reason that they had not visited at any length with him when in town and had failed to return some

papers that he had mailed to them. Normajean Sellers was the natural object of testator's bounty. The will offered for probate was the natural will of the testator in consideration of testator's known views, feelings and intentions, expressed many times, and it is the will that his friends would have expected him to make. Marshall Foley and testator had been at odds for many years, having been in litigation against each other and refusing to speak when they met on the street. There was some evidence that this animosity and hostility between testator and Marshall Foley mellowed during the last year or two of testator's life.

\*      \*      \*      \*      \*      \*

"4. . . . [T]his will was prepared by an attorney in McAlester, Oklahoma, designated by testator. Normajean Sellers was also present and assisted testator in signing his name, at his request. The will of testator offered for probate was duly executed and witnessed on March 8, 1972. Before the witnesses signed, each witness read the will to testator and asked testator if the will was as testator desired, and was assured the will was the testator's wishes. Testator, later . . . was visited by Robert L. Long, an Assistant Vice President of the Farmers and Merchants Bank of Eufaula, who had known and done business with testator for many years, and who was also a notary public. Mr. Long read the entire will to testator and asked if the will was as he wanted and was told that it was, and satisfied himself that testator understood the will and that it represented testator's wishes.

"5. Testator, when he executed the will on March 8, 1972, had testamentary capacity and was not acting under undue influence . . .

\*      \*      \*      \*      \*      \*

"8. . . . The court finds that testator was not a person susceptible to the domination of another; that no person, including Normajean Sellers, was capable of controlling testator's mind and/or

actions. There is no evidence that anyone coerced testator into making a will contrary to his desires. Moreover, the whole tenor and thrust of the evidence was that the long-time associates and friends of testator were aiding and assisting him in doing what he desired to do in carrying out his testamentary intentions and desires.

" . . . If Normajean Sellers had the burden of proving 'no undue influence' she has carried that burden and the evidence and circumstances surrounding the execution of the subject will are sufficient to rebut the presumption, if there is such a presumption in the subject case, of 'undue influence'. . . . ."

■ In a will contest it is the duty of this court, in considering the matter on appeal, to examine the entire record and weigh the evidence for the purpose of determining whether the judgment of the trial court was against the clear weight of the evidence. Hubbell v. Houston, 441 P. 2d 1010 (Okl.1967); In re Harjoche's Estate, 193 Okl. 631, 146 P.2d 130 (1944).

■ First, the verdict and judgment of the trial court that the testator had testamentary capacity was not against the clear weight of the evidence. Contestants argue that the trial court failed to consider certain findings relative to the incompetency of the deceased made in a prior judicial proceeding in which conservators were appointed to manage his property. Since these findings and the proceedings were admitted into evidence when offered by the contestants, it appears that the thrust of the objection is that the trial judge did not give as much weight to these findings as the contestants felt should have been given. It is well established in Oklahoma that a person does not lack testamentary capacity merely because he has been declared incompetent to handle his affairs since the degree and kind of competency required in each instance is different. Moore v. Glover, 196 Okl. 177, 163 P.2d 1003 (1945). Evidence of such an adjudication of incompetency therefore is not conclusive on the issue of testamentary capacity but is merely to be considered. In re Shipman's Estate, 184 Okl. 56, 85 P.2d 317 (1938). While the evidence was in conflict, numerous witnesses gave opinion evidence supportive of the testamentary capacity of the deceased. The finding of. the probate court was not against the weight of the evidence.

■ Second, the finding by the trial court that there was no undue influence by the beneficiary is not against the clear weight of the evidence. The gist of undue influence is the destruction of the free agency of the testator so that his will is not his own but that of another. In re Cook's Estate, 71 Okl. 94, 175 P. 507 (1918). We have carefully reviewed the evidence in its entirety and are convinced as was the trial court that the testator did what he wished and not what someone else wanted.

■ The contestants assert that a presumption of undue influence by the beneficiary arose when it appeared from the evidence that she was in a confidential relationship with the testator and that she had participated actively in the preparation of the will, and that the burden was on the proponent to rebut this presumption, citing Anderson v. Davis, 208 Okl. 477, 256 P.2d 1099 (1952). It appears to us that this is too narrow a reading of the Anderson case. In addition to the above factors, that case requires that the devisee be someone not within the ordinary circle of expected beneficiaries of the testator's bounty for the presumption to arise. In Hubbell v. Houston, supra, 441 P.2d at 1016, the Oklahoma Supreme Court stated:

"The rule of Anderson, which is to the effect that a presumption of undue influence arises when the testator and the beneficiary are in a confidential relationship is limited by the words used in that case to a will 'which is inconsistent with claims of duty and affection' and 'when will is drawn by beneficiary.'"

The Supreme Court in its opinion in Hubbell then went on to emphasize the factor

of lack of participation in preparation of the will by the nephew beneficiary there. However, we think that the other language from Anderson quoted in Hubbell is equally significant. In this instance the will is not inconsistent with the ordinary claims of duty and affection upon the testator. In this case the claims of the beneficiary to the duty and affection of the testator were equal, if not superior to, that of any of the contestants. Therefore, we do not believe that any presumption of undue influence arose but that the burden remained on the contestants throughout to prove it, a burden which the trial court found that they did not sustain.

The trial judge, in his adopted findings, also determined that the evidence rebutted the presumption of undue influence if there was such a presumption. Consequently, we should still affirm his decision if the evidence fairly supports this conclusion even though we, and he, may be mistaken in supposing that no presumption of undue influence arose under the facts of this case. The contestants assert that rebuttal of the presumption requires proof of independent advice received by the testator as to the contested will provisions and that there was no such proof made in this instance. We agree that there is little or no evidence in this case of independent advice received by the testator as to the final provisions in his will under which all his property went to the beneficiary and executrix, though there was a great deal of testimony as to advice by others of the need to make a will and of several versions of wills with various provisions actually submitted to him in prior years, none identical in all aspects with his final will and testament and none ever executed.

However, we do not agree that the rebuttal of undue influence under Oklahoma law *requires* proof of independent advice given to the testator as to the wisdom of his chosen course of action. This is simply one method of rebutting the presumption of undue influence, not the exclusive method. See In re Harjoche's

Estate, supra, 146 P.2d at 132. We find nothing in Anderson v. Davis, supra, which goes so far as to require rebuttal of presumed undue influence only by proof of independent advice to the testator, as the contestants claim. We think that Anderson is consistent with the prevailing view in other jurisdictions which is that any evidence may be received which tends to disprove the presumption of undue influence, including, but not limited to, evidence of independent advice.

The law elsewhere is summarized in part as follows in 123 A.L.R. 1505 (1939):

"In most jurisdictions of this country wherein the question has arisen, and now even in England, according to the most recent decisions, there is no hard and fast rule requiring that to support a transaction between persons standing in a fiduciary or confidential relation the one reposing confidence in the other, or subject to his influence, must have had independent advice.

"In some cases, however, a rule requiring proof of independent advice is laid down, the theory being that the presumption of undue influence or unfairness arising from the fact that the parties to a transaction stood in a confidential or fiduciary relation cannot be rebutted without proof of independent advice.

. . .

" . . . [I]n considering the extent to which the rule has gained or failed to gain, recognition, one must necessarily be impressed by the great number of cases in which transactions between persons standing in a fiduciary relation have been in question and have been upheld or the matters essential to the validity thereof stated, without any attention having been given or reference made to the matter of independent advice. Lord Eldon himself, whose decisions have commonly been relied upon as giving foundation to the supposed rule, stated the equity requirements with reference to transactions between persons occupying fiduciary relationship without declar-

ing independent advice to be essential; and it is much to be doubted whether he considered that a hard and fast rule requiring independent advice should be laid down.

"Under the authorities generally, the real inquiry in such cases as are here under consideration is whether confidence was abused, or the transaction fair and free from the undue influence which, prima facie, is to be inferred from the relationship. The existence or nonexistence of independent advice in the transaction is, according to the prevailing view, merely evidence bearing upon those questions."

In this case there was other evidence from which the trial judge could have concluded as he did that any appearance or presumption of undue influence was dissipated. There was ample evidence that the testator was strong willed, even stubborn, and little influenced by anyone. There was no evidence that the testator had ever entrusted any of his business affairs to his niece, the beneficiary, or ever asked her advice in his business affairs. In fact there is no evidence that she ever influenced him substantially in any other activity in his life. He was a bachelor, a loner, and appears to have relied on no counsel except his own. His relationship with his niece appears to have been merely friendly and social with little solicitation by him for help or advice from her. There was also evidence that the testator had in past years indicated an intention to exclude all of the contestants from sharing in his estate, but never his niece, Normajean Sellers. Though the evidence indicated an amelioration of the relationship of testator with the contestants, especially with his brother, Marshall, it does not appear that he ever indicated any change of mind about leaving the contestants out of his will. We conclude that the finding of the trial judge that any presumption of undue influence was rebutted by other evidence is not in error.

■■■ Declarations of the decedent as to his testamentary desire in past years as well as drafts of former wills never executed by him were admitted into evidence over the objection of the contestants. Such evidence was correctly admitted as tending to prove the probability that his final will and testament coincided with his earlier conceptions and therefore was his own desire and wish and not just that of the beneficiary or the result of undue influence by her. See In re Creger's Estate, 135 Okl. 77, 274 P. 30 (1929); 79 A.L.R. 1447, 1473 (1932); McCormick on Evidence § 249 at p. 590 (2d ed. 1972).

Affirmed.

BOX, P. J., concurs.