This appeal involves the probate of either of two wills executed by Sison Harney, who was a full-blood Chickasaw Indian woman about 90 years old, and had been under guardianship as an incompetent for many years before her death on May 29, 1930. All devisees under both wills submitted for probate were in like manner full-blood Chickasaws. None of the devisees were legal heirs of the deceased, but both sides stood in that close connection where it ought to occasion no surprise that Sison Harney should name him or them as beneficiaries in her will.
In the year 1923 Sison Harney made a will with Joe Burris as beneficiary. Some years thereafter she signed some papers which Joe Burris thought might be a will to Lucy Brown, and on June 3, 1929, he had her make another will to him. On the 24th day of May, 1930, she executed another will, making Lucy Brown, Elta Brown, Polk Brown, and Lewis Brown beneficiaries, and five days thereafter died. It is not clear from the record whether she had made more than one will with the Browns as beneficiaries or not, although Joe Burris seems to have thought that she had.
The county court admitted the will of May 24, 1930, to probate, and Joe Burris appealed to the district court. Upon hearing in the district court, the will of May 24, 1930, was denied probate, and the will of June 3, 1929, with Joe Burris as beneficiary was admitted to probate — and the Browns have appealed to this court.
The will of May 24, 1930, was executed in due form of law, and the sole question submitted by this appeal is whether the judgment of the district court denying probate of same is against the clear weight of the evidence.
No special findings of fact were made by the trial court, but the pleadings and evidence raised the issues of testamentary capacity of Sison Harney and the use of undue influence by Lucy Brown.
It is the unquestioned rule that in a case of this kind, the findings by the trial court of lack of testamentary capacity or use of undue influence will not be disturbed on appeal unless against the clear weight of the evidence. Hunter v. Battiest, 79, Okla. 248, 192 P. 575; Sutton v. Delancy, 160 Okla. 57,15 P.2d 815.
The rule is also suggested by defendant in error that the fact that Sison Harney was under guardianship as an incompetent on May 24, 1930, was presumptive, (though not conclusive) evidence of lack of testamentary capacity at that time. See Lena v. Patterson, 113 Okla. 156, 242 P. 238, and cases cited therein. However, this rule appears to be worth nothing to defendant in error, as Sison Harney had been under guardianship for many years when the will propounded by him was executed, and if the rule should be pursued to any reasonable extent it would also carry down the will made to him.
It is clear from the evidence that the deceased was a very old woman, nearly alone in the world so far as close relatives were concerned, and that she easily reacted to influence, and with the disposition to repay anyone who might do her small kindnesses. While the Burris will is not of first consideration herein, the same things of which he complains in the Brown will manifest themselves even more strongly in the wills made to him. On cross-examination, he testified as follows:
"Q. You say that Sison Harney made a will in 1923? A. Yes. Q. To whom did she will her property then? A. To me. * * * Q. Then in 1929 for some reason she made another? A. Yes, sir. Q. And you were present at that time? A. Yes. Q. Did she will the property to you then? A. Yes, sir. Q. Both times? A. Yes. Q. Then you understand that she made this other will in Durant? A. I didn't know it until after she was dead. Q. You thought you had the last one? A. Yes."
There is no direct evidence of the use of *Page 582 
undue influence on the part of the Browns in procuring the will to them. However, it does appear that in the last sickness of Sison Harney and about a month before her death, Lucy Brown went to her home and got her and took her to her own (Lucy Brown's) home, where she remained until May 23rd, when she was carried to the hospital of Dr. O.J. Colwick in Durant by Mrs. Rosa Spring, who was United States Field Clerk at Durant. The will in question was drawn by Robert Crockett, who was United States Probate Attorney at Durant. Mrs. Spring testified as follows:
"By the Court: Q. When you came over there, did she tell you that she wanted to make a will, and then did you go and tell Mr. Crockett? A. Yes, sir. By Mr. Stinson: Q. Did you hear her say how she wanted her property disposed of? A. Yes, sir. Q. What did she say? A. She held up her hand and counted on her fingers and said she wanted to leave her property to four people and called their names. Q. Had you suggested to her that she make a will? A. No, sir, I never suggested that to her at any time. Q. Did anyone in your presence suggest that she make a will? A. No, sir. Q. The will was drawn in accordance with her wishes? A. Yes, sir."
The United States Probate Attorney who drew the will was without interest in any of the parties to whom she devised her estate, and he received no information as to how it should be drawn except from Sison Harney herself. The devisees did not even furnish the witnesses to attest the will, but Mrs. Spring and Mr. Crockett hunted up some full-blood Indians who knew the testator and took them to the hospital to act as witnesses to its execution.
The testator was carried to the hospital of Dr. O.J. Colwick by Mrs. Spring, and he had her under observation and attended her from that time until her death about a week later. In addition to operating the hospital where Sison Harney died, Dr. Colwick had been engaged in the practice of medicine for more than 25 years, and he had no interest in either will or in the devisees therein. Dr. Colwick testified:
"Q. On May 24, 1930, Doctor, tell the court whether or not she was of such mental capacity as to transact business or understand what was going on? A. Yes, sir; I think so. Q. You think she was capable of understanding and making a will on that day? A. Yes, sir. Q. Did you see her daily on up until she died, Doctor? A. Yes. Q. Tell the court whether or not her mind remained in a normal condition up until she died? A. It did. Q. You never detected anything wrong with her mental faculty at all? A. No, sir. Q. Her mind was lucid and clear up to the day she died? A. Yes, sir. By the Court: Q. Did you witness that will? A. No, sir."
It is not intended by these quotations from the testimony to indicate that there were not slight circumstances from which the use of undue influence by Lucy Brown might be inferred, or some evidence upon which the court might make a finding of lack of testamentary capacity. However, while it is not specially material to this inquiry, it is not out of line to say that the evidence of use of influence is more direct with respect to the making of the Burris will than of the Brown will, and that whatever testamentary capacity Sison Harney had on the 3rd day of June, 1929, when she made the will to Joe Burris, was equally good on the 24th day of May, 1930, when she made the will to the Browns.
We have before us a finding of the county court in favor of the probate of the will of May 2, 1930, and a finding to the contrary by the district court. A reading of the transcript of the evidence compels the conclusion that the judgment of the district court reversing the county court and rejecting the will of May 24, 1930, is against the clear weight of the evidence.
The judgment appealed from is reversed and cause remanded, with instructions to the district court to set aside its order denying probate of the will of May 24, 1930, and to enter further order affirming the judgment of the county court admitting same to probate, and for further proceedings consistent herewith.
The Supreme Court acknowledges the aid of District Judge E.A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.
McNEILL, C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur. *Page 583