In re DeVINE'S ESTATE.

No. 29394.    Jan. 21, 1941.

Rehearing Denied Feb. 11, 1941.

*109 P. 2d 1078.*

S. R. Harper and Chas. G. Ozmun, both of Lawton, for contestant, plaintiff in error.

H. N. Whalin and John F. Thomas, both of Lawton, for proponents, defendants in error.

HURST, J. Lawrence DeVine died testate in Comanche county, where he resided, on May 20, 1935. His will was duly admitted to probate. Thereafter Kelly DeVine, his nephew, who was bequeathed a small sum under the will, filed a contest under section 1110, O. S. 1931, 58 O. S. A. § 61. The county court upheld the will, and on appeal the district court impaneled a jury and submitted to it certain interrogatories, which were answered favorably to contestant, nine jurors signing the answers. The court, however, upon motion of proponents, disregarded the findings of the jury, and rendered judgment sustaining the will. Contestant appeals.

The various errors assigned are but different phrasings of the same contention, that the judgment of the trial court is contrary to the evidence and the law. We are therefore required to examine the record and weigh the evidence. In re Harney's Estate, 172 Okla. 580, 46 P. 2d 503.

The grounds of contest are lack of testamentary capacity due to habitual drunkenness, and undue influence and domination of the testator by the principal beneficiaries. Contestant is a nephew of the testator, and a principal beneficiary under a former will. The principal beneficiaries under the present will are not related to the testator.

The evidence establishes beyond question that testator was at the time of his death, and had been for some time theretofore, addicted to the excessive use of intoxicating liquor, and that his indulgence therein increased in frequency in the last year of his life. He was a bachelor, apparently of mature age, his exact age not being shown, and possessed of property worth some $4,000. In May, 1932, he made a will bequeathing the bulk of his property to his nephew and a niece. In October, 1932, proponents, W. L. James and Ella James, who are husband and wife, moved on the farm home of testator. They had not known him prior to that time, but a brother of proponent W. L. James was at that time living on the farm and assisting in the care and cultivation thereof. This brother moved away shortly after the arrival of proponents, and thereafter proponents lived with testator on the farm, the husband cultivating the farm and the wife doing the housework. The will in their favor was executed by testator on November 26, 1934.

The evidence as to the frequency of testator's excessive indulgence in the use of intoxicants is conflicting. Nearly all the witnesses agree, however, that when sober he was a man of more than average intelligence. Evidence produced by contestant tended to prove that he was rarely if ever sober for a number of months preceding the execution of the last will. The father of contestant testified that he visited testator on November 25, 1934, and found him in bed drunk. There is evidence also that liquor was furnished him at times by proponents. On the other hand, witnesses for proponents testified that testator was frequently sober, and that

his mentality at such times was unimpaired. The circumstances preceding and attending the execution of the will are undisputed. On November 23, 1934, testator, accompanied by W. L. James, went to the office of a reputable physician in Lawton for an examination as to his mental and physical capacity to transact business. This physician, who had known testator previously, testified that he was sober, of normal mind, and in his opinion capable of transacting any ordinary business. To the specific question whether testator was capable of making a will, he answered: "I would say he acted like he knew what he wanted to do." At testator's request, the physician gave him a certificate stating that testator was mentally sound and fully capable of transacting any business he cared to undertake.

On November 24th or 25th testator went to the office of H. N. Whalin, one of the attorneys for proponents in this cause. Mr. Whalin had known testator for a number of years, and had represented him when he acted as administrator of his mother's estate. At this time he showed Whalin a typewritten will, which he stated he had prepared at his home on a typewriter owned and used by him, and asked Mr. Whalin's opinion of it. Whalin suggested one or two minor changes, and testator left, returning on the 26th with the will in the form in which it was executed. Whalin had drawn the will of testator's mother, and testified that testator had evidently used her will as a form which he followed in the preparation of his own. They took the will to another office, where they procured another witness, and the will was executed there, Whalin signing as one of the witnesses. Whalin testified that on both visits to his office no one was with the testator, and that he was sober and rational, and in Whalin's judgment fully competent to understand the nature and consequences of his act. He testified that testator was a man of unusual intelligence, and that on both occasions his intellect seemed as bright and strong as ever. No objection was made to Whalin's testifying, and it is not shown that he had ever represented proponents prior to the probating of the will. He further testified that when testator presented the final draft of the will to him for his approval, he told testator that he saw nothing wrong with it "if this is what you want to do," and that testator stated that it was.

In a case of this nature, the principal question for determination is the mental capacity of the testator at the time of making his will. The fact that he is habitually intoxicated does not render the will invalid, if he had the requisite understanding at the time he made it. In re Anderson's Estate, 142 Okla. 197, 286 P. 17; 28 R. C. L. 95. In determining the mental status of the testator the presumption of sanity will be indulged, and where the will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amounts to evidence of testamentary capacity. In re Free's Estate, 181 Okla. 564, 75 P. 2d 476; In re Mason's Estate, 185 Okla. 278, 91 P. 2d 657.

Tested by the rule announced in these cases, which accords with the general rule, and is supported by the great weight of authority, the finding of the trial court that testator had the requisite mental capacity to make this will is not clearly against the weight of the evidence. The only evidence of irrationality of the testator at the time of making the will is that the chief beneficiaries were not related to him. But there is in the record considerable evidence that he had become greatly attached to them; in fact, some evidence of this nature was adduced by contestant in an effort to show the exercise of undue influence by proponents. Evidence of undue influence or domination by proponents at the time of the making of the will is wholly lacking, and proof that he was to some extent influenced by them in ordinary affairs and that friendly relations existed between him and proponents is not sufficient to establish undue influence. Myers v. Myers, 130 Okla. 184, 266 P. 452; Peace v. Peace, 149 Okla. 123, 299 P. 451; In re Shipman's Estate, 184 Okla. 56, 85 P.

426

2d 317. Here there is no substantial evidence of undue influence or domination which in any way affected the disposition of testator's property. See In re Anderson's Estate, supra. In the present case, as in the Anderson Case, the testator left no dependents. His principal estate consisted of the school land lease on which he lived. The disposition of his property was not so unnatural as to prove his mental incapacity or the exercise of undue influence upon him, and the trial court had before it no evidence of either at the time the will was made. Contestant relies upon McCarty v. Weatherly, 85 Okla. 123, 204 P. 632, as supporting his contention of undue influence, but the facts disclosed by the evidence in that case are so dissimilar to those in the instant case that we do not consider it in point.

While the trial court submitted the issues of mental capacity and undue influence to a jury, it was not bound by their findings, as the case was one of equitable cognizance. In re Anderson's Estate, supra; Peace v. Peace, supra. In such a case the function of the jury is advisory, and the trial court is not bound by its verdict. Bert Whiteis, Inc., v. Motor Mortg. Co., 182 Okla. 384, 77 P. 2d 698.

The judgment of the trial court, not being clearly against the weight of the evidence, will not be disturbed.

Affirmed.

WELCH, C. J., CORN, V. C. J., and BAYLESS and DAVISON, JJ., concur.