Murl SHORT, Appellee,

v.

LaWayne JONES and Nathan Uselton, d/b/a Buddy's Flying Service, Appellants.

No. 50721.

Supreme Court of Oklahoma.

June 3, 1980.

Rehearing Denied July 14, 1980.

---

**454**

Charles Elder, John Mantooth, Purcell, for appellee.

Newcombe & Redman, Inc. by Ralph W. Newcombe, Lawton, for appellants.

HARGRAVE, Justice.

This action is brought for review by writ of certiorari previously granted to the Court of Appeals, Division I, wherein that Court held in an unpublished opinion that 2 O.S.1971 § 3–82(d), (since amended, see 2 O.S.1979 Supp. § 3–82(d)), contains a jurisdictional prerequisite to maintenance of an action to recover for damage caused by herbicide spray which rendered pecan trees permanently barren. The last sentence of (d) of the statute last cited reads:

No action for such alleged damages to growing annual crops or plants may be brought or maintained, however, unless the person claiming the damages shall have filed with the Board a written statement of alleged damages, on a form prescribed by the Board, within ninety (90) days after the date that the alleged damages occurred, or prior to the time that twenty-five per cent (25%) of a crop damaged shall have been harvested.

The factual basis for this action, as plead, is that on the 26th day of June, 1973, Appellant Uselton d/b/a Buddy's Flying Service, sprayed certain lands owned by plaintiff-Appellee, Short. This aerial spraying broadcast a chemical herbicide onto Short's land and had a toxic effect upon certain pecan-bearing trees located on Short's land.

Short alleged 40 acres of his land had been so damaged reducing the value of the land by $300 per acre to a value after injury of $150 per acre. Short also alleged the act of spraying was a wilful act for which punitive damages were properly recoverable in the amount of $25,000.00. Uselton admitted doing business as a crop duster and that he had conducted operations for Jones in the locality alleged, denied the chemical drifted, and alleged he was an independent contractor during the time he was spraying for Jones. Jones in turn denied the petition's allegations, denied Uselton was an agent or employee, asserting his status was that of an independent contractor.

Citing *McArdle v. Stewart*, 446 P.2d 379 (Okl.1968), the intermediate appellate court found compliance with 2 O.S.1971 § 3–82(d) to be jurisdictional and unless complied with, the trial court did not have jurisdiction to render a judgment on the strength of a quote from *Olmstead v. Reedy*, 387 P.2d 631 (Okl.1963), stating:

The language of the statute seems clearly to provide that the filing of a written statement of damages is a condition precedent to the right to commence the action.

We note that the law of the case as reflected in the single Court syllabus states that failure to comply with 3–82(d) in its requirement of a written statement of damages to be filed with the State Board of Agriculture renders a petition demurrable.

█ In holding the absence of notice of damage fatal to a cause of action, the Court of Appeals cited *McArdle v. Stewart, supra,* and *Olmstead v. Reedy, supra.* The statute applicable to these decisions was 2 O.S.1961 § 3–82(d). The statute applicable to this action is 2 O.S.1971 § 3–82(d). The later statute is materially different than the former in that the 1971 version includes a limitation not found in the earlier codification, which is the addition of the phrase "annual crops or plants" to the 1961 version which read: " . . . No action for such damages may be brought or maintained . . . ." so that the 1971 version of 2 O.S. § 3–82(d) read " . . . No action for

such alleged damages to growing annual crops . . . ." This limitation distinguishes *McArdle* and *Olmstead, supra,* from the facts forming the basis of this action, and limits the operation of the amended statute to factual situations not at issue in this case, that is, annual crops.

▮ *McArdle* and *Olmstead, supra,* have no effect on an additional statutory remedy for damage to the trees alleged in plaintiff's petition which is found in 23 O.S.1971 § 72. That section reads as follows, unchanged since 1910:

> For wrongful injuries to timber, trees or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway, in which case the damages are a sum equal to the actual detriment.

The plaintiff's petition alleges his pecan trees were damaged in such a manner that the trees' ability to produce pecans was permanently damaged. Annual crops referred to in 2 O.S.1971 § 3–82(d) when applied to the production of pecans would refer to damage to one yearly crop without harm to the trees producing that crop. Harm to the trees constitutes damage to the real property itself. Indeed, this Court has held in an early action that a single growing crop of fruit was to be considered a part of the realty for purposes of mortgage recordation. *Nicholson v. People's Nat. Bank of Checotah,* 119 Okl. 113, 249 P. 336 (1926). The Federal Supreme Court has spoken on the issue, stating standing timber is a constituent element of the land itself. *U. S. v. Shoshone Tribe of Indians,* 304 U.S. 111, 58 S.Ct. 794, 82 L.Ed. 1213 (1938), *United States v. Cook,* 19 Wall. 591, 22 L.Ed. 210 (1874). Annual crops represent a separate,

if not distinct, classification of plant material. *Phillips v. Keysaw,* 7 Okl. 674, 56 P. 695 (1899), discusses the distinction at length and the summary of that discussion is found in the Court syllabus:

> Growing crops produced by annual labor and cultivation are, for some purposes, a part of the real estate to which they are attached, and until there has been a severance of them from the land, actual or constructive, they follow the title thereto. For other purposes they are regarded as personalty, . . .

In the body of the *Phillips* opinion, *supra,* at p. 696, the Court stated those instances where annual crops are realty and when personalty, expanding upon the syllabus stating:

> Where the land is sold under foreclosure or under execution, the purchaser of the land acquires title to the crops; and when there is a recovery of possession of land held adversely the successful plaintiff is entitled to the growing crops as against the evicted defendant who planted them. Though regarded as part of the realty for the purposes stated, they are classed as personalty for the purposes of levy and sale under attachment and execution, and mostly every other purpose.

See also *Nicholson v. People's Nat. Bank of Checotah, supra.*

To hold the provisions of 2 O.S. § 3–82(d) applies to instances where trees are permanently injured would be to ignore the historically well established dichotomy between timber and annual crops; between real property and personal property. This we refuse to do. 2 O.S. § 3–82(d) refers to annual plants when speaking of notice of damage, and that section does not apply by its very terms to damage to real property, a part of which is the timber growing thereon.[1]

Inasmuch as there exists an independent basis for the action aside from 2 O.S.Supp. 1970 § 3–82(d), (since amended) that is dam-

---

1. For an extended discussion, see *Thompson on Real Property, Vol. 1,* §§ 95–118 (Bobbs-Merrill, 1980).

age to realty, the measure of which is described in 23 O.S.1971 § 72, the intermediate appellate court's reversal of the jury verdict with instructions to dismiss the action is vacated.

The jury returned a plaintiff's verdict for $12,666.66 for damage to the pecan trees growing on the plaintiff's real property, and defendant appeals from the order overruling defendant's motion for new trial.

■ Defendant's first proposition of error is that the jury returned a quotient verdict, and failure to grant a new trial on that basis is reversible error. Sworn affidavits of several jurors are included supporting this allegation, and counsels' affidavit which states that counsel, Mr. Uselton and one Bill Garrett proceeded to the jury room immediately after the verdict was read and gathered all the papers that could be found in the room, on the floor, in trash cans and in the restroom. These scraps of paper allegedly disclose each juror voted on a damage figure which was then divided by 12 to arrive at a verdict. Counsel squarely and fairly proposes that if the past decisions of this Court are disregarded it is perfectly clear the jury reached a quotient verdict. Appellant concedes that unless this Court changes the rule set forth in *Egan v. First Nat. Bank of Tulsa*, 67 Okl. 168, 169 P. 621 (1918), and presently adhered to in this jurisdiction, this proposition of error will avail him not. The appellant correctly summarizes his position thusly, and *stare decisis* aside, the rationale behind our refusal to now allow impeachment of the jury's verdict here is supported by the same public policy stated to be the basis for the rejection of a juror's impeachment of the verdict he assisted in rendering in *Egan, supra*. The exclusion of testimony, depositions or affidavits of a juror impeaching his own verdict may often exclude the only possible evidence of the misconduct referred to and offers but little consolation to the individual considering himself wronged thereby. Nonetheless, a change in the principle, a change in the rule, would injure society generally, not simply an individual litigant, for as the Federal Supreme Court stated in

*McDonald, et al. v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300, modification of the rule would open the door to the most pernicious acts and tampering with jurors, all verdicts could be and many would be followed by an inquiry on the part of the defeated litigant, jurors would be harassed and beset in an effort to establish misconduct sufficient to defeat the verdict, and the result would be that the considerations of the jury, intended to be a *private* deliberation, would be a constant subject of public investigation to the utter destruction of freedom of discussion and frankness, striking to the core of the jury system. The admissibility of such material would be a threat to the jurors' very security in that it would encourage perjury, through bribery and other less subtle methods of persuasion, after the jury had returned to their private abodes, and the slight burden of jury duty falling on the citizen would not cease upon rendition of a verdict and discharge of the jury, but continue on indefinitely. The exclusion of such matters is necessary to preserve the security of the jurors, the secrecy of their deliberations, and the finality of the judgment thereby rendered. Thus we refuse to alter the position taken in a long line of our decisions establishing the matters offered were inadmissible to impeach the judgment.

■ The appellant claims the trial court erred in the instructions given the jury to which he objected. The first questioned jury instruction states in substance that if actual damages are allowed plaintiff and the jury believed by a preponderance of the evidence that the damage inflicted was not the result of a casual or involuntary trespass nor committed under the reasonable belief that the land damaged belonged to the defendant, the jury may in its discretion award triple the amount of actual damages. The other instruction objected to states the measure of damage for injury to realty is equal to the difference in the fair market value of the land before and after injury. Appellants' position in reference to these instructions is that the first instruction, derived from 23 O.S.1971 § 72 refers to trees

or timber having a value which can be calculated separate from the real estate to which they are affixed, and that instruction, combined with the second, allowed treble damages to be ascertained in reference to the diminished value of the land and not in reference to the value of the trees apart from the land upon which they are situated. *Denver Producing & Refining Co. v. Bunch,* 172 Okl. 209, 45 P.2d 117 (1935), involved an action to recover for damage to an orchard. Therein this Court reversed a jury verdict and judgment where the only evidence of damage was referable to the value of the trees apart from the soil. There the Court noted the defendant requested an instruction stating the measure of damage should be the difference between the property immediately before and after the injury. Additionally, the Court noted in passing the expert testimony of valuation of the trees was admissible for jury consideration along with the difference in value before and after damage, but in absence of the latter, reversed the judgment. See also *Pace v. Ott,* 189 Okl. 230, 115 P.2d 253 (1941). The remaining jury instruction questioned is based upon 23 O.S.1971 § 72 and allows damages to be treble for wrongful injury to trees where the wrongdoer is found to have acted willfully. There is no inconsistency. The damages are to be determined by reference to the value of the land before and after injury and once actual damages are ascertained, then the inquiry becomes whether the jury finds the treble damage provision applies, and if so, whether the jury in its discretion chooses to apply the multiplying factor. The instructions given are free of error in the respect challenged, and inasmuch as the instructions given allowed the jury to apply or not apply the multiplication factor when the damage was not the result of an unintentional, casual or involuntary trespass, the questioned instruction was more favorable to the appellant than that to which he was entitled.

 The defendant raises as reversible error the trial court's exclusion of testimony from one Bill Garrett, the reason disclosed in the transcript being his name was not furnished to the plaintiff prior to the date of trial. The defendant contends the listing of that witness as "ground man for Uselton" on the pretrial order is sufficient notice to the opposing party despite that order stating that party's name was unknown at pretrial. Prior to the trial the plaintiff objected to the testimony on the ground that the identity of the individual was not disclosed prior to trial and that objection was sustained. Defendant now proposes failure to disclose the identity here is not sufficient justification for excluding competent relevant testimony under Rule 5(c)(3) of the rules of the District Court of Oklahoma. The identity of the questioned individual was within the knowledge of the defendants inasmuch as he was admittedly a farm manager for the defendant, Jones, and managed the land Uselton was hired to defoliate. Additionally, we note at p. 200 of the transcript that ground men were formerly utilized to mark the flight path of the spray plane as it makes each pass over a field, but *are no longer*; that method of marking the aviator's progress being no longer utilized. Under Rule 5 of the District Courts, the court has broad authority to enforce its orders. The court, acting under this authority, upon this record cannot be held to have abused its discretionary powers in refusing to permit the testimony shown by the offer of proof to be material, even to the point of being the vehicle for introduction of what could be characterized as defendants' most important witness. Such testimony would substantially affect the conduct of the trial and the refusal to allow such a drastic change of position at the very outset of a jury trial cannot be considered an abuse of discretion in the light of the surrounding circumstances summarized here. The District Court has wide discretionary powers to enforce its pretrial orders, and the pre-trial rule, Rule 5(c)(3) of the Rules of the District Court, is designed to forestall the very surprise maneuver which occurred here.

 Appellants' additional objection refers to various rulings of the trial court dealing with the admission and rejection of evidence and the qualification of experts.

In reference to the refusal to qualify a witness as an expert an instance is pointed out where Uselton, the herbicide applicator, was not qualified to testify as an expert witness relative to the effects of the substance he has 16 years' experience in aerial application thereof. The herbicide, 2,4,D, sprayed on the foliage here was and is admittedly designed to kill vegetation. The discretion vested in the court in qualifying the witness was not abused, as the issue of the variance of the effectiveness of a chemical upon different varieties of vegetation is not manifestly within the practical experience of a crop duster or aerial applicator. The refusal to allow a jury view to the affected land is similarly backed by reason which negates an error on the part of the trial court. The transcript reveals the land was not in its original condition inasmuch as the evidence discloses that the dead trees and limbs had been removed from the premises for firewood prior to the trial, and the sound judgment of the trial judge is thereby demonstrated not to have been exercised arbitrarily, precluding a demonstration of abuse of discretion. *McKay v. McKay*, 55 Wash.2d 344, 347 P.2d 1062 (1960). The objection of appellant that a photograph was refused is similarly demonstrated to be free from abuse of discretion within the four corners of the appellant's brief by reference to his admission that the photograph, taken from an aircraft, was blurred.

Lastly, appellant argues there was no evidence upon which to base a damage award because there is no evidence of the number of trees killed or not bearing fruit. This is not the case. The evidence is within the transcript although it appears piecemeal throughout the transcript. At one place therein evidence appears that all but seven trees did not bear fruit. Other evidence places the total number of pecan trees at 100. Simple arithmetic will yield the number of those trees not bearing. Other testimony established the older of those trees would never recover and would die. The fact that other evidence conflicts with this statement presents a question of fact for the jury. The resolution of this conflict of evidence is free from error if any state of the facts in evidence will support the verdict. Indeed, one expert testified at pp. 83 and 84 that his view of the land did not reveal any pecan crop at all. This evidence therefore is sufficient to support a verdict.

The opinion of the Court of Appeals is vacated, and the judgment of the trial court entered pursuant to a jury verdict is AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and OPALA, JJ., concur.

DOOLIN, J., certified his disqualification.