Karen Sue **WILLOUGHBY**, Administratrix of the Estate of Charles Dwayne Willoughby, Deceased, Petitioner,

v.

The **CITY OF OKLAHOMA CITY**, a municipal corporation, et al., Respondent.

No. 61917.

Supreme Court of Oklahoma.

July 23, 1985.

As Corrected Aug. 2, 1985.

Rehearing Denied Oct. 16, 1985.

Robert N. McIlroy, and William E. Woodson, Norman, for petitioner.

Diane Davis Huckins, Asst. Mun. Counselor, City of Oklahoma City, Oklahoma City, for respondent.

HODGES, Justice.

We review by certiorari a certified interlocutory order, an order of the District Court of Oklahoma County sustaining a motion of The City of Oklahoma City (respondent) to quash subpoenas of certain jurors and Trial Judge William Kessler for the purpose that Karen Sue Willoughby, Administratrix of the Estate of Charles Dwayne Willoughby, deceased, (petitioner) was attempting to impeach a jury verdict by affidavits of such jurors and trial judge.

The central question presented herein is whether the jury verdict may be impeached and misconduct shown through the affidavits or testimony of the jurors or trial judge, a former district judge who had disqualified himself from presiding over further proceedings in said action, under 12 O.S.1981 §§ 2605 and 2606(B). We hold that it may and reverse.

Petitioner brought a wrongful death action against respondent after her husband, Charles Dwayne Willoughby, a plumber, died immediately after entering a water meter pit owned and maintained by respondent. A critical issue at trial related to the causation of the husband's death. Respondent denied petitioner's asserted theory of causation that the decomposition of organic materials at the bottom of the pit had caused the atmosphere inside the pit to become oxygen deficient and that the cause of her husband's death was suffocation. After one week of testimony by expert and lay witnesses, the jury returned a verdict in favor of respondent with a 9–3 vote.

The trial judge entered an order overruling petitioner's Motion for New Trial which has been appealed to this Court and has been stayed pending disposition in the district court of petitioner's Petition for New Trial After Term, from which this instant appeal by certified question arises. Subsequent to the overruling of her Motion for New Trial, petitioner filed a Petition for New Trial After Term pursuant to 12 O.S. 1981 § 655 based on the alleged misconduct of the trial judge and juror. She contends that during the trial of the wrongful death case a certain juror, Cindy Gentry, asked the trial judge if she could conduct an independent investigation regarding a material issue relating to the decomposition of organic materials and the cause of decedent's death. The trial judge allegedly authorized her to do so as long as she did not visit the scene of death. Petitioner asserts that the juror sought and obtained opinions from experts and other witnesses and then related such findings, which concurred with respondent's expert's opinion, to the other jurors during deliberations. Attached to petitioner's petition are the affidavits of

William E. Woodson, co-counsel for petitioner, and Eleanor Griffin, one of three jurors voting against respondent's verdict, supporting the alleged misconduct of the trial judge and Juror Gentry.

Petitioner attempted to obtain discovery depositions of the juror and judge involved, issuing and serving both deposition and trial subpoenas. Judge Kessler sustained respondent's Motion to Quash and Application for Protective Order relating to the deposition of Juror Gentry. Judge Kessler then disqualified himself and the matter was transferred to another district judge to consider the Motion to Reconsider which was thereafter denied. Respondent's Motion to Quash pertaining to Judge Kessler was also sustained. Judge Owens rendered the order upon review in this case on November 29, 1983, affirming the previous rulings sustaining respondent's Motions to Quash, effectively prohibiting petitioner from proceeding further in the district court on her Petition for New Trial After Term.

Petitioner's first proposition is 12 O.S. 1981 § 2606(B) specifically authorizes jurors to testify when there are allegations of misconduct such as those made in this case. Section 2606(B) provides in relevant part as follows:

"Upon an inquiry into the validity of the verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes during deliberations. *A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror ...*" (emphasis added).

Petitioner contends that the alleged juror misconduct herein falls within the proviso set forth in the second sentence of section

2606(B). She argues that the affidavits supporting the alleged misconduct show extraneous prejudicial information or improper outside influence and thus, such testimony or affidavits of jurors should be allowed.

Respondent argues in response that the Legislature in enacting the Oklahoma Evidence Code incorporated the then existing Oklahoma case law which prohibited the testimony of jurors to impeach verdicts unless a third party's affidavit or testimony is also submitted to the court without review or consideration of a juror's affidavit or testimony, and denominates this qualification as the "evidence aliunde rule."[1] *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 59 (Okla.1976); *Egan v. First Nat'l Bank of Tulsa,* 67 Okl. 168, 169 P. 621 (1918).

The instant case presents a matter of first impression of the interpretation of the anti-impeachment rule under the Oklahoma Evidence Code. This Court is asked for the first time to determine whether, under 12 O.S.1981 § 2606(B), a juror is competent to testify regarding whether extraneous prejudicial information or outside influence was brought to bear upon a jury for the purpose of impeachment of the verdict, regardless of any testimony of an outside source.

Prior to the enactment of the Oklahoma Evidence Code in 1978, Oklahoma followed the majority rule prohibiting juror testimony for the purpose of impeachment of a jury verdict.[2] The first sentence of section 2606(B) codifies this Court's long established precedents which follow the general rule of anti-impeachment. The Evidence Subcommittee's Note states that section 2606(B) "does not change Oklahoma law significantly. Jurors could not be heard as to matters forming the substance of their verdict." The Note further states: "They could be heard on whether extraneous prejudicial information or influence was improperly brought to bear upon a juror."

Respondent directs our attention to the cases cited in the Evidence Subcommittee's Note supporting the principle that a juror may be required to testify about extraneous, prejudicial information or influence improperly brought to bear upon a juror, to wit: *Harrod v. Sanders,* 137 Okl. 231, 278 P. 1102 (1929); *Missouri, O. & G. Ry. Co. v. Smith,* 55 Okl. 12, 155 P. 233 (1916). Respondent asserts that *Harrod* was overruled in *Wolff v. Oklahoma Ry. Co.,* 184 Okla. 374, 87 P.2d 671 (1939). He further asserts that *Missouri, O. & G. Ry. Co.* followed *Carter State Bank v. Ross,* 52 Okl. 642, 152 P. 1113 (1915) which was specifically overruled in *Egan v. First Nat'l Bank of Tulsa,* 67 Okl. 168, 169 P. 621 (1918). It contends, therefore, that a blanket prohibition is the current law in Oklahoma subject to the evidence aliunde rule, which permits juror testimony only when proof of the jury misconduct is made by witnesses other than the jurors.

We are urged by petitioner to re-examine and recognize an exception to the general prohibition to permit the testimony or affidavit of a juror pertaining to extraneous information as competent evidence to be used to impeach a verdict without the limitations of the aliunde rule in light of the enactment of the new Evidence Code. Regrettably, the Evidence Subcommittee's Note is apparently misleading in that it cites opinions of this Court which have subsequently been overruled in support of its representation of the state of the law in Oklahoma before enactment.

---

1. The terms "evidence aliunde" and "aliunde rule" are defined in Black's Law Dictionary 68 (5th ed. 1979) as follows:

"Evidence aliunde. Evidence from outside, from another source. In certain cases a written instrument may be explained by evidence aliunde, that is, by evidence drawn from sources exterior to the instrument itself, e.g., the testimony of a witness to conversations, admissions, or preliminary negotiations. Evidence aliunde (i.e., from outside the will) may be received to explain an ambiguity in a will. "Aliunde rule. A verdict may not be impeached by evidence of juror unless foundation for introduction thereof is first made by competent evidence aliunde, or from some other source."

2. *Horn v. Sturm,* 408 P.2d 541 (Okla.1965); *Glockner v. Jacobs,* 40 Okl. 641, 140 P. 142 (1914).

While we considered the case of *Short v. Jones,* 613 P.2d 452 (Okla.1980), after the enactment of the new Code, we did not address therein the anti-impeachment rule in view of the new provisions of § 2606(B). *Short* dealt with an asserted quotient verdict which we believe would not have fallen within the statutory exception to the general rule for the admissibility of juror testimony reflecting jury misconduct.[3] Consequently, the factual situation there did not present facts appropriate for us to address the new statutory exception embodied in subsection B of section 2606. We, therefore, look to federal civil cases which have interpreted the language of Federal Rule of Evidence 606, as the rule in Oklahoma is substantially similar to the federal rule.[4]

Our attention is directed to the case of *In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982). In this class action suit arising out of a fatal fire in a supper club where plaintiffs' theory was that the condition of the aluminum wiring caused the fire, a new trial was ordered where a juror had conducted experimentation on his own wiring and told at least six other jurors of the results which were different from plaintiffs' theory. The court's reasoning was that the juror considered evidence from an experiment which the parties did not have the opportunity to scrutinize or cross-examine. It concluded that, in effect, the juror's experiment injected extraneous information into the case. The court stated that Rule 606(b) of the Federal Rules of Evidence "specifically allows inquiry into external influences upon a jury. This exception is necessary to assure that the parties receive a fair trial and that the integri-

ty of the system itself is maintained." 695 F.2d at 213. Although the court recognized the important policy considerations advanced by the general anti-impeachment rule, including freedom of deliberation, guarding of disgruntled jurors against verdict tampering and finality of verdicts, it nevertheless concluded that the assurance of a fair trial and the preservation of judicial integrity outweighed such considerations. The opinion does not require corroborating evidence of misconduct from a person other than the jurors.

■ In the present matter, as in *Beverly Hills,* the jurors considered information regarding the results of a juror's independent investigation which had not been presented at trial by the parties, but rather communicated to them by the juror. The parties were denied the opportunity to cross-examine this evidence. It is our opinion that under the circumstances presented herein the testimony or affidavit of a juror supporting such misconduct for the purpose of impeaching the verdict is permissible under section 2606(B) of the Oklahoma Evidence Code. A juror is competent to testify concerning prejudicial extraneous information or influences injected into or brought to bear upon jury deliberations without the additional requirement of independent evidence of such misconduct.

Petitioner's second proposition is the trial judge may be required to testify in post-trial proceedings involving alleged misconduct in which the trial judge participated. Petitioner claims that by authorizing the juror to conduct her own investigation the trial judge violated 12 O.S.1981 § 581.[5]

---

3. The Advisory Committee's Note on Federal Rule of Evidence 606 provides in pertinent part: "Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes and any other feature of the process. Thus testimony or affidavits of jurors have been held incompetent to show ... a quotient verdict...."

4. Oklahoma Evidence Code makes only minor changes in language in Federal Rule 606, chang-

ing "in connection therewith" in subdivision (b) to "during deliberations" and omitting "except that" to make two sentences out of one in the federal rule.

5. 12 O.S.1981 § 581 provides: "If the jury are permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court *that it is their duty not to converse with, or suffer themselves to be addressed by, any other person, on any subject of the trial,* and that it is their duty not to form or express an opinion

■ Respondent counters that 12 O.S. 1981 § 2605 does not permit the trial judge to testify as a witness in the trial of a case.[6] We disagree. Judge Kessler is no longer the judge presiding in the case as he disqualified himself in the case and has since retired from the bench. Further, petitioner requests that he testify as a witness at a post-trial proceeding not as a witness in the trial at which he formerly presided. Judges have been frequently requested to testify as to matters which occurred in cases previously tried before them.[7]

This is not a situation where the judge is being called upon to testify in a trial presently before him, but rather concerns a previous trial. Consequently, we find that the Oklahoma Evidence Code does not prohibit the testimony of Judge Kessler regarding matters in the former trial.

Respondent asserts petitioner's counsel did not act properly in securing an affidavit of the juror without prior approval of the trial court. Although petitioner's counsel's contact with Juror Griffin was unsolicited, respondent argues that his contact with Juror Gentry was purposely pursued in an attempt to secure a favorable affidavit. It notes policies and rules of federal jurisdictions regarding post-trial inquiries of jurors by attorneys. Respondent urges that post-trial investigation of jurors should be under the supervision of the district court, although he cites no rule, law or case dictating this result for Oklahoma state court

proceedings. The question must, therefore, be considered as novel in Oklahoma.

We recognize that our holding today liberalizing the use of juror testimony to impeach verdicts in qualified situations under section 2606(B) obviously raises the question of the propriety of attorneys contacting jurors after discharge in an effort to discover information of possible juror misconduct which could be used to impeach a verdict. Disciplinary Rule 7–108[8] of the Code of Professional Responsibility permits an attorney to communicate with the jury after the conclusion of the trial with certain limited exceptions. In Advisory Opinion 248, the Board of Governors held that it is unethical for a lawyer to inquire of a jury after verdict on matters affecting other than the question of the validity of the verdict involved. In addition, the American Bar Association's Ethical Consideration 7–29 provides in part:

"After the trial, communication by a lawyer with jurors is permitted so long as he refrains from asking questions or making comments that tend to harrass or embarrass the juror or to influence actions of the juror in future cases. Were a lawyer to be prohibited from communicating after trial with a juror, he could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected. When an extrajudicial communication by a lawyer with a juror is permitted by law, it should be made considerately

thereon, until the case is finally submitted to them." (emphasis added).

**6.** 12 O.S.1981 § 2605 provides:
"The judge presiding at the trial shall not testify in that trial as a witness. No objection need be made in order to preserve the error."

**7.** *See* McCormick's Handbook of the Law of Evidence § 68 n. 71 (2d ed. 1972); 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 605.02 (1982).

**8.** DR 7–108, 5 O.S.1981 Ch. 1, App. 3 provides in relevant part:
"(D) After discharge of the jury from further consideration of a case with which the lawyer

was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.
(E) A lawyer shall not conduct or cause, by financial support or otherwise, another to conduct a vexatious or harassing investigation of either a venireman or a juror.
(F) All restrictions imposed by DR 7–108 upon a lawyer also apply to communications with or investigations of members of a family of a venireman or a juror.
(G) A lawyer shall reveal promptly to the court improper conduct by a venireman or a juror, or by another toward a venireman or a juror or a member of his family, of which the lawyer has knowledge."

and with deference to the personal feelings of the juror."

■■■ We believe that Rule 2606(B) dovetailed with DR7–108 and EC 7–29 provide the proper standard for determining permissible inquiry into jury conduct by counsel. Accordingly, inquiry should not be made into subjects about which a juror may not testify and should not constitute harassment. We do not think, however, that leave of court is necessary for juror inquisitions by attorneys. Juror inquiry by petitioner's counsel, therefore, was proper as the inquiry was apparently within the contours of section 2606(B) regarding extraneous information injected at trial and did not constitute harassment.

Lastly, respondent argues the affidavits of petitioner's counsel and Juror Griffin are hearsay and not admissible citing *Fields v. Volkswagen of America,* 555 P.2d 48, 59 (Okla.1976). It is unnecessary for us to address respondent's hearsay argument for 12 O.S.1981 § 431 expressly permits the use of such affidavits in this instance. Section 431 provides:

> "An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process in an action, to obtain a provisional remedy, an examination of a witness, a stay of proceedings, or upon a motion or in any other case permitted by law."

■■■ Thus, upon consideration of petitioner's Petition for New Trial After Term petitioner may use affidavits in support thereof. The hearsay nature of the affidavits are not considered in determining their admissibility because they are not submitted to bear upon the merits of the case but rather to support her post-trial petition.

To summarize, we find that the district court improperly sustained respondent's motions to quash based upon the potential inadmissibility of testimony or affidavits of jurors and a former district judge. The order of the district court sustaining respondent's motion to quash is reversed.

SIMMS, C.J., DOOLIN, V.C.J., and WILSON, KAUGER, SUMMERS, JJ., concur.

LAVENDER, HARGRAVE, and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

There are at least *three* reasons why the appellant may not secure corrective relief from this court:

## I

This case comes to us as a petition by the plaintiff [appellant] for certiorari to review a certified interlocutory order which, in a proceeding for new trial under 12 O.S.1981 § 655, sustained the defendant's [appellee's] motion to quash and its application for protective order to prevent the plaintiff from "piercing the sanctity of the jury room" by attempting to subpoena a former juror in the case for the purpose of securing testimony. The order in question, which *admittedly* precluded the plaintiff from proceeding further with her quest for the § 655 relief, was made on *June 23, 1983.* Plaintiff did not seek appellate review of this order within 30 days of its rendition.

An order that precludes a party from proceeding further in the case or precludes it from obtaining the relief sought is a final, appealable order. 12 O.S.1981 § 953; *Centorp Corp. v. Gulf Production Corp.,* 183 Okl. 436, 83 P.2d 181 [1983]; Rule 1.11(b)(5), Rules on Perfecting a Civil Appeal, 12 O.S.Supp.1984, Ch. 15, App. 2.

Because the plaintiff failed to appeal from the *terminal order* of June 23, 1983, the error, if any made therein, is now beyond the reach of our reviewing cognizance.

## II

The order sought to be reviewed here was *reaffirmed* on November 29, 1983 by the assigned successor of the original trial judge who had retired from service. The November 29th order provides that this § 655 proceeding is to remain arrested "pending the appeal of this [o]rder *by certi-*

*fied question"*. Another certification order was later procured on February 10, 1984; the petition for certiorari was filed within 30 days from the *second* (February 10, 1984) certification order.

The 30–day time limit for lodging a proceeding to review a certified interlocutory order runs from the date such order is certified for review. This time limit cannot be extended either by the trial court or by this court. These are the plain and unequivocal terms of Rule 1.51(b), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2.

Rule 1.51(b) has been *violated.* Neither trial nor appellate courts have a roving commission to extend appeal time. *Sowers v. Archer*, 161 Okl. 148, 17 P.2d 422, 423 [1932]. *The purported recertification order of February 10, 1984 is a nullity.* Defendant's motion to dismiss this proceeding should be granted.

### III

The question sought to be reviewed in this case is not one "on the merits of the controversy". It does not raise an issue pertinent either to the plaintiff's original claim in tort for wrongful death or to the city's defense to that claim. Instead, it tenders for our review a procedural point arising *after* judgment. Postjudgment issues are *dehors* the already-decided merits. See definition of "merits" in *Flick v. Crouch*, Okl., 434 P.2d 256, 261 [1967] and *Tidmore v. Fullman*, Okl., 646 P.2d 1278, 1283 [1982] (Opala, J., dissenting).

The pertinent statute, 12 O.S.1981 § 952(b)(3), plainly *requires* that the order that is certified for our review *affect a substantial part of the merits of the controversy.* Extant case law *stresses* this requirement. See, *Young v. Oklahoma City*, Okl., 524 P.2d 22, 23 [1974] and *Community National Bank of Warr Acres v. Beasler*, Okl., 520 P.2d 813, 814 [1974]; see also *White v. Wensauer*, Okl., 702 P.2d 15 [1985], for a certiorari that had to be recast as an original jurisdiction proceeding because it did not raise an issue on the merits.

Inasmuch as the certified postjudgment issue to be reviewed here is *dehors* the merits, the order does not present a matter properly within this court's cognizance under the provisions of § 952(b)(3).

Evenhanded fairness calls for undeviating enforcement of conformity to orderly process. Judicial institutions are without power to grant dispensation from jurisdictional prerequisites that are statutorily imposed. *O'Bannon v. Oklahoma Tax Commission*, Okl., 633 P.2d 741, 742 [1981].

I would dismiss this proceeding for corrective relief because (a) it is untimely as an appeal from the final order of June 23, 1983; (b) it is untimely as a petition for certiorari to review the trial court's certified order of November 29, 1983; and (c) it does not tender an issue that affects "the merits" of this already-adjudicated controversy.