In the Matter of the ESTATE OF
Larry B. LAMBE, Deceased.

John H. LAMBE, Appellant,

v.

FIRST NATIONAL BANK & TRUST
COMPANY OF OKLAHOMA CITY,
Oklahoma, Appellee.

No. 61793.

Court of Appeals of Oklahoma,
Division No. 4.

Nov. 12, 1985.

Released for Publication by Order of
Court of Appeals Dec. 20, 1985.

Larry L. Bays, Edward E. Sutter, Alva, for appellant.

C.D. Curtis, Curtis, McCue, Schoeppel & Hallren, Fairview, for appellee.

STUBBLEFIELD, Judge.

On March 1, 1967, Larry B. Lambe, the decedent and a resident of Woods County, Oklahoma, executed his last will and testament whereby he bequeathed small sums of money to his brother, nephew, and cousin and devised the remainder of his estate, consisting of large real estate holdings, and in excess of $170,000, to the First Church of Christ, Scientist, also known as Mother Church, Boston. The decedent died without lineal heirs on August 15, 1982. On September 23, 1982, the First National Bank and Trust Company of Oklahoma City, the executor named in the decedent's will, filed a petition to have the will admitted to probate. John H. Lambe, the dece-

dent's nephew and appellant, filed a petition to contest the will on October 21, 1982. The nephew's petition, which was amended on April 29, 1983, alleged that the decedent lacked the necessary testamentary capacity to validly execute the will because he was "suffering from the physical and mental ravages of chronic alcoholism." The petition further alleged that the will was not properly executed and had been obtained by undue influence practiced upon the decedent by the First Church of Christ, Scientist.

The case was heard on November 10 and 11, 1983. The testimony dealt almost entirely with the decedent's alcoholism and its effect upon his testamentary capacity. No evidence was presented regarding the claim of undue influence. On January 19, 1983, the trial court found that the decedent possessed the necessary testamentary capacity on the date of the will's execution and admitted the will to probate.

## I

The primary contention raised by the contestant on appeal pertains to the propriety of the trial court's finding regarding the decedent's testamentary capacity. Although he concedes that there is absolutely no evidence which conclusively shows that the decedent was intoxicated at the time of his execution of the will, he contends that the evidence overwhelmingly establishes that the decedent's constant, continuous, and substantial use and abuse of intoxicating liquor had so permanently impaired and deranged his mind that he was unable to validly dispose of his property by will on the date of its execution. We disagree.

 The evidence overwhelmingly establishes that the decedent was a highly accomplished and skilled musician with above-average intelligence; that he was capable of managing his large real estate holdings and conducting his farming operations at a profit; that he was able to intelligently manage and invest large sums of money; and, that he traveled numerous miles to visit friends and relatives for many years after his execution of the will. Although not gainfully employed, the decedent managed his day-to-day affairs and ensured that his daily needs were met long after the death of his mother and father. He further knew what property he owned, how much money he possessed, and who his relatives were. Although his life was characterized by the continuous use and abuse of alcohol both before and after execution of the will, the only surviving subscribing witness and notary public testified that the decedent was sober at the time of the execution and that, had he been intoxicated, the notary would not have notarized his signature. Expert witnesses, ranging from alcoholic counselors to physicians specializing in the treatment of persons suffering from chemical dependencies, additionally concluded that had the extent of any brain damage suffered by the decedent prior to 1967 been of sufficient severity so as to render him incompetent to dispose of his property by will on March 1, 1967, the decedent would not have been able to perform the relatively complicated tasks undertaken by him during the many years following the will's execution. The decedent's neighbors, Mary Leva Herren and Pearl Bruner, had daily or weekly contact with the decedent for the last ten or eleven years of his life, and although they had seen him intoxicated, they described him as generally sober and more than competent to manage his own affairs. Both, in fact, described him as above average in intelligence.

 The standards by which the testamentary capacity of an individual affected by drugs or alcohol are to be judged were set forth by the supreme court of this state in *In re Anderson's Estate,* 142 Okla. 197, 200, 286 P. 17, 20 (1929) (quoting *Page on Wills* § 159 (2d ed.)):

"The general principles of testamentary capacity apply in cases where the testator is affected by the use of alcohol or drugs. In such case a person may have the capacity which the law requires for making a will, if, in spite of the use of alcohol or drugs, he has sufficient mind and memory to understand the nature

and extent of his property, the proper objects of his bounty and the nature of the testamentary act. . . .

As in other cases, the question to be determined is solely that of the capacity of the testator at the time of making his will. The fact that he was habitually intoxicated or under the influence of drugs does not render his will invalid, if he had the requisite understanding at the time that he made it."

See also In re DeVine's Estate, 188 Okla. 423, 109 P.2d 1078 (1941). Although this court will examine and weigh the testimony on appeal, it will not disturb the findings and conclusions of the trial court unless clearly against the weight of the evidence. See, e.g., In re Estate of Bracken, 475 P.2d 377 (Okla.1970).

After reviewing the testimony of the witnesses, we cannot say that the trial court's finding on the issue of the testamentary capacity of the decedent is against the clear weight of the evidence.

## II

The contestant next asserts that the trial court erred in determining that the decedent's will was validly executed. Title 84 O.S.1981 § 55, sets forth the formal requisites to the valid execution and acknowledgement of wills. At trial, the only surviving subscribing witness and the notary public to the will's execution each testified as to their own and the decedent's compliance with the formal requirements of section 55. The will is additionally self-proved which, in effect, rendered the testimony of these witnesses unnecessary to the proponent's case in chief. 84 O.S.1981 § 55(5).

The contestant objects to the sufficiency of the testimony offered by these witnesses primarily because of their failure to recall such factors as whether the decedent wore glasses, whether he was accompanied by a friend or relative, and in which room the

execution took place. The contestant did not, however, offer any affirmative evidence to establish that the will was not validly executed, notwithstanding his successful efforts in establishing that these witnesses could not remember every single event surrounding the execution of the will.

■ Under similar circumstances, the supreme court of this state has been reluctant to invalidate the execution of a will solely because of the subscribing witnesses' inability to remember all of the events surrounding the will's execution. See, e.g., Hobbs v. Mahoney, 478 P.2d 956 (Okla. 1970); In re Estate of Hering, 426 P.2d 685 (Okla.1967); Goff v. Knight, 201 Okla. 411, 206 P.2d 992 (1949). Its reluctance has only been heightened in cases such as this in which the will contains a valid attestation clause, which serves as prima facie evidence of a valid execution. Hobbs, 478 P.2d at 958–59. Since the contestant utterly failed to rebut the proponent's prima facie case of a valid execution, the trial court was correct in finding the will to have been executed in compliance with the law.

## III

The contestant next complains that the trial court permitted a witness, who remained in the courtroom during trial, to present rebuttal testimony on behalf of the proponent after the rule of sequestration had been invoked.[1] The witness, who was an employee of the First Church of Christ, Scientist, was present in the courtroom throughout the preceding two days of trial. The witness testified that the decedent had become a member of the church in June 1932 and continued to be a member in good standing until the date of his death. The proponent called the witness in an effort to rebut testimony offered by the contestant to show that the decedent was not a mem-

---

1. In accordance with a practice that has long existed, the trial court is vested with authority to exclude witnesses from the courtroom and to separate and segregate them to prevent their discussion of testimony. The practice is gener- ally referred to as "The Rule" or the rule of exclusion or sequestration of witnesses. For the sake of clarity, we shall refer to it as the rule of sequestration of witnesses.

ber of that church. Noting the partial validity of the contestant's objection to the testimony of this witness, the trial court severely limited the extent of her testimony and prohibited counsel from eliciting any testimony other than that which served to directly rebut the testimony of the contestant's witnesses.

■ The rule of sequestration of witnesses has been held in numerous criminal cases (including cases decided after adoption of the Evidence Code) as inapplicable to rebuttal witnesses. *Fioret v. State,* 641 P.2d 551 (Okla.Crim.App.1982), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2306, 73 L.Ed.2d 1308 (1982); *Martin v. State,* 596 P.2d 899 (Okla.Crim.App.1979). Although we do see the difficulty in anticipating rebuttal testimony and the possible injustice if the rule were strictly applied to bar all rebuttal witness' testimony, we are not willing to find that there is a blanket exclusion from application of the rule for rebuttal witnesses.

A trial is a search for the truth. Witnesses are the foundation from which the truth must emerge, and the court has the right to require and expect a witness' testimony to be untainted by other evidence heard during trial. To allow a witness to observe any portion of the trial prior to his testimony runs the risk of that witness' testimony, however innocently, being shaped or slanted by his trial observations. The use of the rule is a device to assist in preventing this contamination of testimony. It is not a requirement of trial, but is rather a device which, at the option of either side, may be utilized to ensure testimonial purity. To allow a blanket exception for the rebuttal witness is to give a vehicle to the shrewd trial tactician to escape the confines of the exclusionary rule, and to offer tainted testimony.

■ The better rule is that the rule of sequestration of witnesses generally applies to all witnesses' testimony, but that the trial judge is vested with discretionary authority to determine whether allowance of testimony in technical violation of the rule would prevent injustice or would con-

stitute a detrimental violation. *Edwards v. State,* 655 P.2d 1048 (Okla.Crim.App.1982). This prohibits an abuse of the rule by those trying to elicit coached testimony under the guise of rebuttal and likewise permits true rebuttal testimony, which was not reasonably foreseeable at the time of exclusion of witnesses.

■ The allowance of the objectionable testimony here clearly constituted a careful exercise of the court's discretionary authority. We find no error in the trial court's action.

## IV

In his next attack on the trial court's order, the contestant objects to the admission of the trial depositions of Dr. John R. Smith, Mary Leva Herren, and Pearl Bruner. His objection stems from the alleged untimeliness of the notice given by the proponent's attorney; the trial court's order of October 4, 1983, which required the parties to complete their discovery by October 17, 1983; and the alleged insufficiency of the proponent's showing of the unavailability of these witnesses for trial. We shall address the contestant's objections in reverse order.

Prior to its repeal on November 1, 1984, 12 O.S.1981 § 390, provided that:

A witness shall not be obliged to attend for examination on the trial of a civil action or to attend to give his deposition except in the county of his residence or a county adjoining the county of his residence. . . .

Title 12 O.S.Supp.1984 § 3209(A)(3)(c) and (e), provides that:

The deposition of a witness, whether or not a party may be used for any purpose if the court finds:

. . . .

c. That the witness is unable to attend or testify because of age, illness, infirmity or imprisonment, or

....

e. That the witness is an expert witness, who for purposes of this section is a person educated in a special art or profession or a person possessing special or peculiar knowledge acquired from practical experience. . . .

 In the instant case, the evidence reveals that Dr. Smith was a resident of Oklahoma County and a physician specializing in the treatment of persons suffering from chemical dependencies. Mary Leva Herren was eighty-four years old at the time of trial and suffered from a heart condition. During her deposition, she testified that her physician had advised her that it would be preferable for her not to testify at trial. Pearl Bruner, who was eighty on the date of trial, had open-heart surgery the preceding year. Her physician had similarly advised her against testifying at trial. The depositions of each were accordingly admissible for any purpose under the authority of the statutory provisions, and the trial court's finding in that regard will not be disturbed on appeal. *See, e.g., Lee v. Volkswagen of America, Inc.,* 688 P.2d 1283 (Okla.1984) (per curiam); *Weeks v. Oklahoma Natural Gas Co.,* 676 P.2d 272 (Okla.Ct.App.1983).

 The contestant also complains that three trial depositions were taken after the court-ordered discovery cut-off date of October 17, 1983. We find this argument also without merit. As stated by the trial court, its order was not intended to extend to trial depositions. Moreover, it is difficult for this court to discern how the contestant was in any way prejudiced by the court's interpretation. His counsel knew of the names and addresses of each deponent yet failed to take their depositions prior to October 17, 1983. Counsel for the contestant was additionally advised in both the notice and at the commencement of the depositions that each would be used by the proponent at trial. With that knowledge, he appeared and conducted a vigorous cross-examination of each witness.

The trial court has broad discretion to enforce its orders and, under these circumstances, we cannot conclude that the trial court either abused its discretion or that the contestant was in any way prejudiced by the interpretation of its previous order. *See, e.g., Short v. Jones,* 613 P.2d 452 (Okla.1980); District Court Rule 5, 12 O.S. 1981, ch. 2, app. Its decision will not be reversed on appeal.

### V

 The contestant's final objection pertains to the sufficiency of the notice which preceded the deposition of Pearl Bruner. All parties concede that the notice was not served in sufficient time to allow the contestant three days for preparation, exclusive of the day of service of the notice, and that contestant's attorney was not present during the direct examination. *See* 12 O.S.Supp.1984 § 3207(C)(1). Her deposition was admitted into evidence only after the contestant's counsel was permitted to cross-examine her after the trial of this cause, but before the trial judge's ruling. The cross-examination was made a part of the deposition and considered in the court's decision. Mrs. Bruner's testimony was nearly identical to that given by Mary Leva Herren. Under these circumstances, we fail to see how the contestant has been prejudiced by the admission of the deposition. *See, e.g., St. Louis-San Francisco Ry. v. Fox,* 359 P.2d 710 (Okla.1961).

The order of the trial court is accordingly affirmed in its entirety.

BRIGHTMIRE, P.J., and RAPP, J., concur.